# Exhibit 6

to Declaration of Neil Anthony Golding
in Support of Ex Parte Application
for Discovery Order Pursuant to 28
U.S.C. § 1782

**London**
Freshfields Bruckhaus Deringer LLP
100 Bishopsgate
London EC2P 2SR
T   +44 20 7936 4000 (Switchboard)
    +44 20 7832 7416 (Direct)
F   +44 20 7108 7416
LDE No 23
E   neil.golding@freshfields.com
www.freshfields.com

**Doc ID**
EUROPE-LEGAL-251765437
**Our Ref**
NAG/ET/LF

Morrison & Foerster (UK) LLP
The Scalpel
52 Lime Street
London
EC3M 7AF

FAO: Gemma Anderson

12 November 2021

Dear Sir/Madam

**Claim of Credit Suisse Virtuoso SICAV-SIF (an Investment Company with Variable Capital under Luxembourg law, SICAV), acting in respect of its sub-fund, Credit Suisse (Lux) Supply Chain Finance Fund**

1.  We refer to your letters of 18 October 2021 and 4 November 2021, and to our letter dated 7 October 2021. Unless otherwise stated, we have adopted the same definitions as in previous correspondence.

2.  Your client's refusal to engage with the serious matters and allegations raised in our letter is disappointing. To the (very) limited extent your client has provided information, we have set out below our response and where we require further clarity.

**Management structures, responsibilities and control of Vision Fund Entities**

3.  In paragraph 2 of your letter you state: '*SBG is a distinct legal entity from the other entities listed in Schedule 1 to the Letter. The purported attribution of knowledge to SBG at, for example, paragraphs 83 and 85 of the Letter is, therefore, misconstrued.*'

4.  Please provide further information to substantiate this comment. We note, by way of example, that public filings show SBG to be the relevant legal entity which exercises significant control over SBIA UK. This suggests that management and control among SoftBank Entities are not wholly distinct.

5.  Consequently, please:

    a.  confirm the relationship between SBG and each of the other SoftBank Entities as defined in our 7 October letter; and

Freshfields Bruckhaus Deringer LLP is a limited liability partnership registered in England and Wales with registered number OC334789. It is authorised and regulated by the Solicitors Regulation Authority (SRA no. 484861). For further regulatory information please refer to www.freshfields.com/support/legal-notice.

A list of the members (and of the non-members who are designated as 'partners') of Freshfields Bruckhaus Deringer LLP is available for inspection at its registered office, 100 Bishopsgate, London EC2P 2SR. Any reference to a 'partner' means a member, or a consultant or employee with equivalent standing and qualifications, of Freshfields Bruckhaus Deringer LLP or any associated firms or entities.

    b. confirm that no SBG director, senior employee or representative also holds equivalent roles at other SoftBank entities (and if this is not the case please detail all examples).

**SGB's knowledge of the Katerra Notes**

6. At paragraph 5 of your letter, you refer to the Omnibus Deeds. Please could you provide an unredacted copy of the version of those deeds to which you refer.

7. At paragraph 5(b)(ii) of your letter, we do not agree with your interpretation of the Omnibus Deed. It is not clear that, for Greensill to assume any and all losses in respect of the Katerra Notes, Greensill would have to have purchased the Katerra notes from the CS Funds.

8. Accordingly, please confirm:

    a. what SBG understood would be the effect of the Katerra restructuring on the Katerra Notes held by the Fund;

    b. whether Recital C to the Omnibus Deed was in fact a statement which SBG relied upon at the time to satisfy itself that Greensill did intend to repurchase the Katerra Notes;

    c. the basis for SBG's alleged understanding that Greensill would be repurchasing the notes from CSAM: was it only on the basis of the Omnibus Deed, or anything else and, if so, what else;

    d. when (at the time of the Katerra restructuring in November and December 2021) SBG understood the Notes would be repurchased; and

    e. how SBG became aware in January 2021 that the US$440 million provided as consideration for the Convertible Note had not been used to repurchase the Katerra Notes, including SBG's explanation as to why this arose.

9. In addition, please provide all documentary evidence and recorded communications at your disposal which support your answers to the points at 8(a)-(e) above.

10. At paragraph 5(b)(iii) of your letter, you state that based on the warranty at clause 6.1(c)(iii) of the Omnibus Deeds, SBG was entitled to assume that Greensill would ensure that its obligations under the Katerra restructuring were consistent with its other obligations generally, including any to our client under the Notes. However, this warranty could not be an answer to a claim by our client if – as appears to be the case – your client in fact intended to procure a breach of contract. Please accordingly confirm if clause 6.1(c)(iii) is the sole basis for SBG's alleged assumption that Greensill would ensure that its obligations under the Katerra restructuring were consistent with its other obligations generally, including to our client under the Notes, and, if not, what else formed the basis for that alleged assumption (and please provide copies of any documents relied upon in this regard).

***Provision of credit support by SBG to Greensill entities in relation to the Katerra programme***

11. We note your assertion at paragraph 5(a) of your letter that '*SBG did not provide "credit support" to any Greensill entity in relation to Katerra*'. This is contrary to the Fee Letter dated 9 December 2019 referred to at paragraph 23 of our letter, which expressly refers to '*credit support provided by Softbank Group Corp. or an affiliated entity ("Softbank") on or about the date hereof in the form of a credit default swap or guarantee, and/or any other credit support provided by Softbank*'. Please accordingly confirm whether SBG or an "*affiliated entity*" of SBG provided any credit support to Greensill (or its affiliates) in connection with the Katerra programme pursuant to the terms of the Fee Letter dated 9 December 2019 and, if not, why not.

***Mr Masayoshi Son's personal knowledge and involvement in the Katerra programme and restructuring***

12. We are further surprised that you did not address the extent of Mr Masayoshi Son's knowledge and involvement in the Katerra restructuring (as set out in paragraphs 7, 10 and 23 of our letter).

13. Please confirm whether or not Mr Masayoshi Son did in fact have personal knowledge and / or involvement in the Katerra programme.

14. In relation to our requests for documents and information at paragraphs 97 and 98 of our letter of 7 October 2021, we also note your refusal to provide the information requested and make the same request again. We remind you that paragraph 6(c) of the Practice Direction on Pre-Action Conduct and Protocols states that pre-action steps usually include the parties disclosing key documents relevant to the issues in dispute.

15. We look forward to hearing from you to in relation to the queries raised above by no later than 26 November 2021.

16. We reserve the right to bring proceedings against SBG without further notice.

17. We further assume that you are authorised by the SBG to accept service on its behalf.

Yours faithfully

Freshfields Bruckhaus Deringer LLP