# Exhibit 8

to Declaration of Neil Anthony Golding in Support of Ex Parte Application for Discovery Order Pursuant to 28 U.S.C. § 1782

# quinn emanuel trial lawyers | london

90 High Holborn, London WC1V 6LJ, United Kingdom | TEL +44 20 7653 2000 FAX +44 20 7653 2100

WRITER'S DIRECT DIAL NO.
**+44 20 7653 2222**

WRITER'S EMAIL ADDRESS
**richardeast@quinnemanuel.com**

1 November 2021

**Freshfields Bruckhaus Deringer LLP**
100 Bishopsgate
London EC2P 2SR

For the attention of Neil Golding

Our ref:   09475-00004 RE

<u>**BY EMAIL**</u>

Dear Sirs/Madams,

**Purported claim by Credit Suisse Fund against various SoftBank Vision Fund entities concerning receivables sold by Katerra**

1. We refer to your letter of 19 October 2021 concerning claims alleged by Credit Suisse Virtuoso SICAV-SIF (an Investment Company with Variable Capital under Luxembourg law, SICAV), acting in respect of its sub-fund, Credit Suisse (Lux) Supply Chain Finance Fund (the "**CS Fund**") regarding certain receivables sold by Katerra Inc. ("**Katerra**").[1]

2. We act for certain entities listed in Schedule 1 to your letter, being SoftBank Vision Fund LP, SoftBank Vision Fund II-2 LP, SVF Abode (Cayman) Limited, SVF II Abode (Cayman) Limited, SVF Habitat (Cayman) Limited, SB Investment Advisers (UK) Limited, SB Investment Advisers (US) Inc., SVF II Wyatt Subco (Singapore) Pte. Limited and SVF II Holdings (Singapore) Pte. Limited (together, the "**Vision Fund Entities**"). We do not represent SoftBank Group Corp ("**SBG**"), which is a distinct legal entity separately represented by Morrison & Foerster (UK) LLP.

---

[1] Unless otherwise defined, capitalised terms bear the same meaning that is given to them in your letter of 19 October 2021.

**quinn emanuel urquhart & sullivan uk llp**

LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | SEATTLE | BOSTON | SALT LAKE CITY
LONDON | TOKYO | MANNHEIM | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS | ZURICH | SHANGHAI | PERTH | STUTTGART

Quinn Emanuel Urquhart & Sullivan UK LLP is a limited liability partnership registered in England and Wales (with registered number OC337278) and is authorised and regulated by the Solicitors Regulation Authority. A list of members and their professional qualifications is open to inspection at our registered office, 90 High Holborn, London WC1V 6LJ, United Kingdom.

3. By letter dated 21 October 2021, you wrote directly to one of our clients, despite having written to our firm on the same matter only two business days earlier. Your decision to write directly to one of our clients, in circumstances where you were self-admittedly aware (or at the very least, on notice) that we were acting for that entity, is professionally inappropriate. Please ensure, consistent with your professional obligations, that all future correspondence is directed to our firm in respect of these matters.

4. At the outset, we note that the fundamental premise of your letter is the assumption that it is possible to conflate the identity and knowledge of numerous different "SoftBank Entities," including the Vision Fund Entities (for example, at paragraphs 1, 5, 47-48 and 83). Each of the entities listed in Schedule 1 to your letter is a separate legal entity, many of which have separate management structures and differentiated responsibilities. Accordingly, your attempt to attribute knowledge and intent broadly across all of these different entities is both factually and legally flawed.

5. Our clients do not intend to engage with your allegations and enquiries raised in your letter, as despite the length of the letter, such enquiries amount to nothing more than a generalised fishing expedition by the CS Fund. By not addressing any issue directly in this letter, the issue or allegation is not admitted, and we reserve our clients' rights to raise any further points (if necessary).

6. We are however instructed to put your client on notice of the matters set out below.

7. *First*, each of the five potential claims identified in your letter suffers from the same fatal flaw. Each claim is premised upon your assertion (at paragraph 85) that "SoftBank Entities" knew or ought to have known that the effect of the Katerra restructuring transactions discussed in your letter would be to harm the CS Fund by effectively rendering the Katerra Notes held by the CS Fund worthless. Our clients had no such knowledge and, therefore, could never have possessed (and never did possess) the requisite intent, nor could it be said that they assumed any form of duty to your clients in respect of the claims that you seek to outline in your letter.

8. Indeed, implicit in your assertion as to our clients' knowledge is a presumption that the SoftBank Entities knew or ought to have known that the CS Fund held the underlying economic interest in the Katerra Notes at the time the restructuring transactions occurred.

9. Not only is the basis for this presumption not explained in your letter, but it is explicitly contradicted by the very same documents you have cited. For example, as quoted at paragraph 62.2 of your letter, Recital C of the Omnibus Deed provides that "*As part of*

*the consideration provided by Greensill in respect of the SVF II Loan Note, <u>Greensill will assume any and all losses in respect of the Katerra Notes and the Katerra Programme</u>*" (emphasis added). In order for "*Greensill*" to "*assume any and all losses in respect of the Katerra Notes*," Greensill would obviously have had to repurchase the Katerra Notes from the CS Fund. As such, in exchange for Vision Fund II's agreement to provide Greensill with US$440 million, our clients understood that Greensill would in fact repurchase the Katerra Notes.

10. Moreover, your assertion (in paragraphs 84 and 85) that "SoftBank Entities" knew or ought to have known that Greensill's entry into the Katerra restructuring transactions breached Greensill's obligations to the CS Fund under the Participation Agreement ignores the express warranties provided by Greensill in the Omnibus Deed. Specifically, in clause 6.1(c)(iii) of the Omnibus Deed, Greensill warranted that its "*entry into and performance by it of ... the transactions contemplated by* [the Omnibus Deed] *do not and will not conflict with ... any agreement or instrument binding upon it*." Based on this express warranty, it was plainly reasonable for Vision Fund II to assume that Greensill had already taken, or would take, whatever steps were necessary to ensure that its obligations under the Katerra restructuring transactions were consistent with any obligations Greensill owed to the CS Fund (or its related entities).

11. In summary, your assertion that "SoftBank Entities" knew or ought to have known that the Katerra restructuring transactions would cause harm to the CS Fund is: (a) not supported by any of the evidence cited in your 33-page letter; and (b) contradicted by the express terms of the Omnibus Deed.

12. *Second*, and further to the above, the Vision Fund Entities did not in fact become aware that Greensill had failed to buy back the Katerra Notes from the CS Fund <u>until January 2021</u>, well after the negotiation and consummation of the Katerra restructuring transactions. When, at that time, the Vision Fund Entities queried how Greensill could comply with its obligations under the Katerra restructuring transactions without having bought back the Katerra Notes, Greensill's General Counsel, Jonathan Lane, represented that Greensill had formed the view that it was able to take that course of action on the basis of legal advice Greensill had received from Allen & Overy (which has not been seen or reviewed by our clients). Accordingly, we invite the CS Fund to pursue this matter with Allen & Overy, who we understand (despite having previously represented Greensill) is presently acting for the Joint Administrators of GCUK, as well as for the Australian Joint Liquidators of the Greensill parent company, Greensill Capital Pty Limited.

13. *Finally,* the Vision Fund Entities decline to provide any of the information requested in paragraphs 97 or 98 of your letter, save to note that no amounts were ever remitted to Vision Fund II pursuant to clause 3 of the Omnibus Deeds. Our clients are not obliged to provide you with any of the information sought.

14. In short, the claims alleged in your letter are baseless and without merit. Your letter was notably not, and could never have been, sent pursuant to the Pre-Action Protocol, suggesting that your own client is all too aware that its allegations fall far short of being even reasonably arguable. We will rely on this letter in seeking orders as to costs against your client (or any other Credit Suisse entity), should the CS Fund attempt to pursue any action against the Vision Fund Entities.

15. For the avoidance of doubt, all of the Vision Fund Entities' rights are reserved, including (without limitation) their rights as to jurisdiction. Nothing in this letter is, or should be construed to be, a submission to the jurisdiction of the Courts of England and Wales. For the avoidance of doubt, the Vision Fund Entities do not submit to the jurisdiction of the Courts of England and Wales.

Yours faithfully,

*[signature]*

**QUINN EMANUEL URQUHART & SULLIVAN UK LLP**