# Exhibit 9

to Declaration of Neil Anthony Golding
in Support of Ex Parte Application
for Discovery Order Pursuant to 28
U.S.C. § 1782

**London**
Freshfields Bruckhaus Deringer LLP
100 Bishopsgate
London EC2P 2SR
T +44 20 7936 4000 (Switchboard)
  +44 20 7832 7416 (Direct)
F +44 20 7108 7416
LDE No 23
E neil.golding@freshfields.com
www.freshfields.com

**Doc ID**
EUROPE-LEGAL-251840431
**Our Ref**
NAG/ET/LF

Quinn Emanuel Urquhart & Sullivan LLP
90 High Holborn
London
WC1V 6LJ

FAO: Richard East

12 November 2021

Dear Sir/Madam

**Claim of Credit Suisse Virtuoso SICAV-SIF (an Investment Company with Variable Capital under Luxembourg law, SICAV), acting in respect of its sub-fund, Credit Suisse (Lux) Supply Chain Finance Fund against the Vision Fund Entities (among others)**

1.  We refer to your letter of 1 November 2021 and to our letter dated 19 October 2021. Unless otherwise stated, we have adopted the same definitions as in previous correspondence.

2.  As a preliminary matter, we note the suggestion in paragraph 3 of your letter that it is somehow inappropriate to write directly to your clients. This suggestion is not sustainable. It is perhaps not a matter which need be debated now that you have belatedly come on the record, and going forward we will of course correspond with you in the usual way, but for completeness:

    a.  at the meeting in September 2021 between our respective clients (referred to in paragraph 97.1 of our letter) your clients agreed to provide details of their lawyers in order that correspondence could be directed to them in the usual way. This they failed to do;

    b.  we wrote to Mr Mackey on 7 October 2021, and at any point between then and 21 October 2021 it would have been perfectly possible for you to have sent a simple confirmation of who you were acting for, with a more substantive response to follow. As you are no doubt aware, this is the approach which Morrison & Foerster (who represent SoftBank Group Corp) adopted and as a result we had no need to write to their client directly.

Freshfields Bruckhaus Deringer LLP is a limited liability partnership registered in England and Wales with registered number OC334789. It is authorised and regulated by the Solicitors Regulation Authority (SRA no. 484861). For further regulatory information please refer to www.freshfields.com/support/legal-notice.

A list of the members (and of the non-members who are designated as 'partners') of Freshfields Bruckhaus Deringer LLP is available for inspection at its registered office, 100 Bishopsgate, London EC2P 2SR. Any reference to a 'partner' means a member, or a consultant or employee with equivalent standing and qualifications, of Freshfields Bruckhaus Deringer LLP or any associated firms or entities.

3. It is disappointing that your clients (the **_Vision Fund Entities_**) have chosen (by their own admission) not to engage with the allegations and enquiries raised by our client, but instead have responded to the serious concerns detailed in our 31 page letter with a few vague assertions over three and a half pages. We have set out below a number of matters in relation to which we require further clarity.

**Management structures, responsibilities and control of Vision Fund Entities**

4. First, in paragraph 4 of your letter you state: '_Each of the_ [SoftBank Entities] _is a separate legal entity,_ **many** _of which have separate management structures and differentiated responsibilities. Accordingly, your attempt to attribute knowledge and intent broadly across all of these different entities is both factually and legally flawed_' (emphasis added).

5. Please provide further information to substantiate these comments. Our investigations, including an examination of publicly available documents, together with your careful use of the word '_many_', strongly suggests otherwise. The SoftBank Entities' management and control appear to be closely linked, with knowledge shared between them.

6. For example, SB Investment Advisers (UK) Limited (**_SBIA UK_**)'s annual report dated 31 March 2020 states that its principal activity is the provision of fund management activities to funds including SoftBank Vision Fund LP and SoftBank Vision Fund II-2 LP. The annual report continues that SBIA UK '_continues to make decisions relating to the acquisitions, structuring, financing and disposals_' of SoftBank funds, as well as assuming responsibility for '_determining and implementing the investment strategies and policies of the Funds._' These descriptions indicate common management and control between SBIA UK, SoftBank Vision Fund LP and SoftBank Vision Fund II-2 LP. We further note that since SBIA UK's incorporation, SoftBank Group Corp has been named as the relevant legal entity exercising significant control over it in SBIA UK's Companies House filings.

7. Consequently, please:

   a. confirm which Vision Fund Entities are alleged to have separate management structures and then particularise those management structures, including by naming all directors and other senior employees and representatives, and confirming their periods of service;

   b. particularise the differentiated responsibilities of each Vision Fund Entity; and

   c. confirm if there are any Vision Fund Entities which are not ultimately controlled by SoftBank Group Corp.

**Vision Fund Entities' knowledge of the Katerra Notes**

8. At paragraph 9 of your letter, you refer to the Omnibus Deed. Please could you provide an unredacted copy of the version of that deed to which you refer.

9. We do not agree with your interpretation of Recital C to the Omnibus Deed. It is not clear that '_for "Greensill" to "assume any and all losses in respect of the Katerra_

*Notes…Greensill would obviously have had to repurchase the Katerra Notes from the CS Fund'.*

10. Accordingly, please confirm:

    a.  what the Vision Fund Entities understood would be the effect of the Katerra restructuring transactions on the Katerra Notes held by the Fund;

    b.  what documents / communications the Vision Fund Entities relied upon in forming this view (and to the extent there are documents / communications in support, please particularise them);

    c.  whether Recital C to the Omnibus Deed was in fact a statement which the Vision Fund Entities relied upon *at the time* to satisfy themselves that Greensill did intend to repurchase the Katerra Notes;

    d.  whether it was only on the basis of Recital C to the Omnibus Deed that your clients allegedly understood that Greensill would repurchase the Katerra Notes and, if not, what else your clients relied upon in this regard (and please provide copies of any documents which evidence the basis for this alleged understanding);

    e.  when the Vision Fund Entities allegedly understood that the Katerra Notes would be repurchased; and

    f.  precisely when the Vision Fund Entities first understood that the Katerra Notes would not be bought back from the Fund and why, in January 2021, the Vision Fund Entities queried how Greensill could comply with its obligations under the Katerra restructuring transactions without having bought back the Katerra Notes (as referred to at paragraph 12 of your letter).

11. At paragraph 10, you refer to clause 6.1(c)(iii) of the Omnibus Deed and you state that based on the warranty therein, "*it was plainly reasonable for Vision Fund II to assume that Greensill had already taken, or would take, whatever steps were necessary to ensure that its obligations under the Katerra restructuring transactions were consistent with any obligations Greensill owed to the CS Fund (or its related entities)*". However, this warranty could not be an answer to a claim by our client if – as appears to be the case – your clients in fact intended to procure a breach of contract. Please accordingly confirm if clause 6.1(c)(iii) is the sole basis for Vision Fund II's alleged assumption that Greensill had already taken, or would take, whatever steps were necessary to ensure that its obligations under the Katerra restructuring transactions were consistent with any obligations Greensill owed to the Fund (or its related entities) and, if not, what else formed the basis for that alleged assumption (and please provide copies of any documents relied upon in this regard).

**Vision Fund Entities' understanding of the advice Greensill received from Allen & Overy**

12. At paragraph 12 you state that queries were raised with Greensill when the Vision Fund Entities became aware that Greensill had not bought back the Katerra Notes. In response, you state that Jonathan Lane, Greensill's general counsel, '*represented that*

*Greensill had formed the view that it was able to take that course of action on the basis of legal advice Greensill had received from Allen & Overy*'. You then note that the Vision Fund Entities did not see the advice which Greensill purported to rely on. To the extent that any further information was provided by Jonathan Lane as to the rationale for Allen & Overy's legal advice, please provide details (including any evidentiary records).

13. In response to your assertions in paragraphs 13 and 14, we remark, for the avoidance of doubt, that all correspondence to date has been made in the spirit of the practice direction on pre-action conduct and protocols (the **Practice Direction**).

14. In relation to our requests for documents and information at paragraphs 97 and 98 of our letter of 19 October 2021, we also note your refusal to provide the information requested and remind you that paragraph 6(c) of the Practice Direction states that pre-action steps usually include the parties disclosing key documents relevant to the issues in dispute. We accordingly reiterate the requests made at paragraphs 97-98 of our letter of 19 October 2021.

15. We look forward to hearing from you to in relation to the queries raised above by no later than 26 November 2021.

16. We reserve the right to bring proceedings against one or more Vision Fund Entities without further notice.

17. We further assume that you are authorised by the Vision Fund Entities to accept service on their behalf.

Yours faithfully

Freshfields Bruckhaus Deringer LLP