Melissa Baily (Bar No. 237649)
melissabaily@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone:    (415) 875-6600
Facsimile:    (415) 875-6700

Robert Feldman (Bar No. 69602)
bobfeldman@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone:    (650) 801-5000
Facsimile:    (650) 801-5100

Andrew Corkhill, *pro hac vice forthcoming*
andrewcorkhill@quinnemanuel.com
Level 15
111 Elizabeth Street
Sydney, NSW 2000
Australia
Telephone:    +61 9146 3500
Facsimile:    +61 9146 3600

*Attorneys for SB Investment Advisers (US), Inc.*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| *In re* Ex Parte Application of Credit Suisse Virtuoso SICAV-SIF in Respect of the Sub-Fund Credit Suisse (Lux) Supply Chain Finance Fund,<br><br>                         Petitioner. | Case No. 3:21-mc-80308-JCS<br><br>**SB INVESTMENT ADVISERS (US), INC.'S MOTION TO VACATE AND QUASH**<br><br>Hon. Joseph Spero<br><br>Hearing Date: April 15, 2022<br>Time: 9:30 a.m.<br>Courtroom: F |

## NOTICE OF MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on April 15, 2022 at 9:30 am in Courtroom F of the above-entitled court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, SB Investment Advisers (US), Inc. ("SBIA US"), by and through their undersigned counsel, will move the Honorable Joseph Spero for an order vacating the Court's January 4, 2022 Order granting Petitioner's application to take discovery pursuant to 28 U.S.C. § 1782 and quashing the resulting subpoena.

This motion is made under 28 U.S.C. § 1782, Civil Local Rule 7, and the authorities cited herein. This motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the proposed order submitted herewith, all exhibits and other papers on file in this action, such other evidence and argument as may be presented at or before the hearing on this motion, and all matters of which the Court may take judicial notice. Counsel met and conferred on January 31, 2022 and were unable to resolve the issues underlying this motion.

DATED: February 18, 2022

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: ____/s/ Melissa Baily_____
      Melissa Baily (Bar No. 237649)
      melissabaily@quinnemanuel.com
      50 California Street, 22nd Floor
      San Francisco, California 94111-4788
      Telephone: (415) 875-6600
      Facsimile: (415) 875-6700

*Attorneys for SB Investment Advisers (US), Inc.*

# <u>TABLE OF CONTENTS</u>

I.      PRELIMINARY STATEMENT .................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND .............................................3

     A.    The Relevant Parties .................................................................................3

          1.   The SoftBank Entities ....................................................................3

          2.   The Greensill Entities ....................................................................3

          3.   The Katerra Entities ......................................................................4

          4.   Credit Suisse Virtuoso SICAV-SIF...............................................4

     B.    The Katerra Supply Chain Financing Transactions .................................5

          1.   The Initial Securitization Transaction ............................................5

          2.   The Restructuring Transaction ......................................................6

          3.   Greensill's Failure To Buy Back The Notes ..................................8

     C.    The Texas Action .....................................................................................9

     D.    Petitioner Asserts 423 Claims Against Respondent .................................10

     E.    The 1782 Applications .............................................................................10

III.    LEGAL STANDARD ............................................................................................11

IV.     ARGUMENT .........................................................................................................11

     A.    PETITIONER FAILS TO SATISFY THE § 1782 STATUTORY
          REQUIREMENTS ...................................................................................11

          1.   There Is No "Foreign Proceeding," And It Is Highly Unlikely That
              Petitioner Will Ever Be Able To Bring One ..................................11

          2.   Petitioner's Subpoena Is A Pre-Litigation Fishing Expedition That Is
              Prohibited Under § 1782 ..............................................................16

     B.    THE *INTEL* FACTORS WEIGH HEAVILY IN FAVOR OF VACATING
          THE ORDER AND QUASHING THE SUBPOENA ............................18

          1.   *Intel* Factor 1: The Requested Evidence Can Be Obtained From
              Parties In The Yet-To-Be-Filed English Proceeding .....................18

          2.   *Intel* Factor 2: The Non-Existent Nature Of Petitioner's 423 Claim
              Weighs Against Discovery.............................................................20

          3.   *Intel* Factor 3: The Application Seeks To Circumvent English Proof-
              Gathering Restrictions And Domestic Policy ................................21

4.    *Intel* Factor 4: The Subpoena Is Overly Intrusive And Burdensome ...........22

C.    THE SUBPOENA SHOULD BE QUASHED UNDER RULE 45 ........................24

D.    ALTERNATIVELY, THE COURT SHOULD STAY ENFORCEMENT
OF THE SUBPOENA ............................................................................................24

V.    CONCLUSION .................................................................................................................25

# TABLE OF AUTHORITIES

**Page**

**Cases**

*In re Application of Alves Braga,*
   789 F. Supp. 2d 1294 (S.D. Fla. 2011) ...................................................................... 25

*Aventis Pharma v. Wyeth,*
   2009 WL 3754191 (S.D.N.Y. Nov. 9, 2009) ............................................................ 21

*Ayyash v. Crowe Horwath LLP,*
   2018 WL 2976017 (S.D.N.Y. June 13, 2018) .......................................................... 17

*Baxalta Inc. v. Genentech, Inc.,*
   2016 WL 11529803 (N.D. Cal. Aug. 9, 2016) ................................................... 19, 21

*In re Cathode Ray Tube (CRT) Antitrust Litig.,*
   2013 WL 183944 (N.D. Cal. Jan. 17, 2013) ............................................................. 21

*In re Certain Funds, Accts., &/or Inv. Vehicles Managed by Affiliates of Fortress Inv. Grp. LLC,*
   2014 WL 3404955 (S.D.N.Y. July 9, 2014) .................................................. 16, 17, 18

*Chevron Corp. v. Donziger,*
   2013 WL 4536808 (N.D. Cal. Aug. 22, 2013) .......................................................... 24

*In re de Armas,*
   2018 WL 1863748 (S.D. Fla. Mar. 1, 2018), *report and recommendation adopted,* 2018 WL
   1859343 (S.D. Fla. Mar. 15, 2018) .......................................................................... 25

*In re Degitechnic,*
   2007 WL 1367697 (W.D. Wash. May 8, 2007) ....................................................... 20

*In re Eurasian Nat. Res. Corp., Ltd.,*
   2018 WL 1557167 (N.D. Cal. Mar. 30, 2018) ......................................................... 16

*In re Ex Parte Apple Inc.,*
   2012 WL 1570043 (N.D. Cal. May 2, 2012) ........................................................... 11

*In re Ex Parte Application of Qualcomm Inc.,*
   162 F. Supp. 3d 1029 (N.D. Cal. 2016) .................................................................... 22

*In re Harbour Victoria Inv. Holdings Ltd. Section 1782 Petitions,*
   2015 WL 4040420 (S.D.N.Y. June 29, 2015) .......................................................... 16

*HT S.R.L. v. Velasco,*
   125 F. Supp. 3d 211 (D.D.C. 2015) ......................................................................... 20

*Igbonwa v. Facebook, Inc.,*
   2019 WL 109443 (N.D. Cal. Jan. 4, 2019) .............................................................. 12

*In re: Ex Parte Application Varian Med. Sys. Int'l AG,*
   2016 WL 1161568 (N.D. Cal. Mar. 24, 2016) ............................................. 18, 19, 21

*In re Intel Corp. Microprocessor Antitrust Litig.*,
    2008 WL 4861544 (D. Del. Nov. 7, 2008) ............................................................. 12

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004) ................................................................... 11, 12, 20, 21, 22

*Khrapunov v. Prosyankin*,
    931 F.3d 922, 925–26 (9th Cir. 2019) ................................................................... 16

*In re King.com Ltd.*,
    2016 WL 4364286 (N.D. Cal. Aug. 16, 2016) ....................................................... 20

*In re Kreke Immobilien KG*,
    2013 WL 5966916 (S.D.N.Y. Nov. 8, 2013) .......................................................... 21

*MetaLab Design Ltd. v. Zozi Int'l, Inc.*,
    2018 WL 368766 (N.D. Cal. Jan. 11, 2018) ........................................................... 19

*Nidec Corp. v. Victor Co. of Japan*,
    249 F.R.D. 575 (N.D. Cal. 2007) .......................................................................... 24

*Nikon Corp. v. GlobalFoundries U.S., Inc.*,
    2017 WL 4224770 (N.D. Cal. Sept. 22, 2017) ...................................................... 24

*Norex Petroleum Ltd. v. Chubb Ins. Co. of Canada*,
    384 F. Supp. 2d 45 (D.D.C. 2005) ........................................................................ 20

*In re Pinchuk*,
    2014 WL 1328484 (S.D. Fla. Mar. 31, 2014) ........................................................ 25

*In re Pioneer Corp.*,
    2018 WL 4963126 (C.D. Cal. Aug. 27, 2018) ................................................... 16, 17

*In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.*,
    634 F.3d 557 (9th Cir. 2011) ................................................................................. 16

*In re Sargeant*,
    278 F. Supp. 3d 814 (S.D.N.Y. 2017) ................................................................... 18

*In re Schlich*,
    2016 WL 7209565 (D. Mass. Dec. 9, 2016) .......................................................... 20

*Schmitz v. Bernstein Liebhard & Lifshitz, LLP.*,
    376 F.3d 79 (2d Cir. 2004) .................................................................................... 20

*Siemens AG v. W. Digital Corp.*,
    2013 WL 5947973 (C.D. Cal. Nov. 4, 2013) ......................................................... 22

*Soto v. Castlerock Farming & Transp., Inc.*,
    282 F.R.D. 492 (E.D. Cal. 2012) .......................................................................... 24

*In re Tovmasyan*,
    2021 WL 3737184 (D.P.R. Aug. 20, 2021) ........................................................... 16

1

In re Rule 45 Subpoenas Issued to Google LLC & LinkedIn Corp. Dated July 23, 337 F.R.D. 639
    (N.D. Cal. 2020) ........................................................................................................................... 24

2

3

**Statutory Authorities**

28 U.S.C. § 1782 ....................................................................................1, 2, 10-1, 16-22, 24, 25

4

5

6

**Rules and Regulations**

Fed. R. Civ. P. 26(b)(2)(C)........................................................................................................ 24

Fed. R. Civ. P. 45 ............................................................................................................... 2, 24

Local Rule 7 .............................................................................................................................. i

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.     **PRELIMINARY STATEMENT**

This case arises out of Credit Suisse's desperate attempt to blame SoftBank for hundreds of millions of dollars in losses that Credit Suisse suffered as a result of the collapse of Greensill, an Australian supply chain finance company.  In reality, Credit Suisse and SoftBank—which was a significant investor in Greensill—were both harmed by Greensill's corporate mismanagement. However, in a transparent effort to deflect responsibility for one of the multiple embarrassing losses it sustained in 2021, Credit Suisse is now claiming that various SoftBank entities orchestrated a restructuring transaction in late 2020 that was designed to victimize Petitioner—a Credit Suisse fund—by stripping assets from Greensill that would otherwise have been available to pay back Petitioner.  This is categorically false.  As the contracts and contemporaneous communications clearly reflect, the impugned transaction was intended to put Greensill in funds to enable it to pay back Petitioner, as SoftBank has previously explained to Credit Suisse.

Apparently unwilling to accept the truth, Petitioner filed an *ex parte* § 1782 application in this Court on December 23, 2021, representing that it was seeking "narrowly tailored" discovery in support of a forthcoming claim under § 423 of the UK Insolvency Act of 1986 (the "423 Claim") that Petitioner intended to bring "within the coming weeks."  Moreover, Petitioner represented that the requested discovery was "relevant" to the 423 Claim, and could not otherwise be obtained in the English proceeding.    Petitioner's *ex parte* application was granted on the basis of these representations, and the subpoena was immediately served on Respondent.

Petitioner's representations to the Court were inaccurate or incomplete in a number of material respects.  *First*, notwithstanding Petitioner's representation that the 423 Claim would be commenced in England "within the coming weeks," no such action has been filed.  Nor has petitioner sought—let alone obtained—leave from the English court to commence the proceeding, or to serve the putative SoftBank defendants outside the jurisdiction.  These are serious procedural hurdles that Petitioner is unlikely to clear.  *Second*, far from being "narrowly tailored," Petitioner's requests seek thousands of documents across a nine-month time period.  *Third*, the requested documents are not required to plead a claim under § 423, and would be relevant—if at all—only to the final relief phase of any English proceeding.  The real reason Petitioner is seeking these

documents now is that—as acknowledged by Petitioner's counsel—they may assist in identifying additional claims against Respondent and its affiliates. *Finally*, in the event Petitioner ever actually commences its 423 Claim and clears all of the jurisdictional hurdles (which is highly unlikely), all of the requested documents would be obtainable via discovery in the English proceedings.

Once these facts are recognized, the true purpose of Petitioner's § 1782 application becomes clear—it is nothing more than a baseless fishing expedition aimed at manufacturing claims against Respondent and other SoftBank entities. Petitioner's application accordingly fails to satisfy the statutory requirement in § 1782 that the documents sought be "for use" in a "foreign proceeding," while the discretionary *Intel* factors also weigh heavily against granting the requested discovery. For similar reasons, the subpoena should also be quashed under Federal Rule of Civil Procedure 45.

Respondent therefore respectfully requests that the Court vacate its January 4, 2022 Order granting the *ex parte* application and quash the resulting subpoena, protecting Respondent from burdensome, intrusive, and unnecessary discovery demands, and preventing Petitioner from abusing § 1782 for a fishing expedition that is "for use" in a "foreign proceeding" in name only.

Denying Petitioner's application would force it to do what it should have done in the first place: seek and obtain leave from the English court to initiate and serve out its 423 Claim, and then seek to obtain the requested documents through discovery in the English proceedings. That result fully comports with the efficiency and comity rationales underpinning § 1782. If, however, the Court is not inclined to quash the subpoena outright, then, at the very least, it should be stayed until Petitioner obtains the necessary leave to commence proceedings in England and attempts to obtain the requested documents through the English discovery process. This will protect Respondent from undue burden and expense, and allow the instant dispute over § 1782 statutory requirements and *Intel* discretionary factors to be resolved and/or clarified by the English court's determinations regarding Petitioner's standing and purported 423 Claim. Such a stay would not prejudice Petitioner.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   The Relevant Parties

#### 1.   The SoftBank Entities

SoftBank Group Corp. ("SBG") is a strategic holding company headquartered in Japan.  East Decl. ¶ 17.  SoftBank Vision Fund L.P. ("SVF I") and SoftBank Vision Fund II-2 L.P. ("SVF II" and together with SVF I, the "Vision Funds"),[1] are Jersey limited partnerships that invest in emerging technologies through privately negotiated transactions in operating entities, generally referred to as "portfolio companies" and, in some cases, through direct or indirect investments in public securities.  O'Connor Decl. ¶¶ 5, 6, 8.  SVF I is managed by SB Investment Advisers (UK) Limited ("SBIA UK"), while SVF II is managed by SB Global Advisers Limited ("SBGA").  *Id.* ¶¶ 5, 6.  SBIA UK provides advisory services to SBGA in respect of SVF II.  *Id.* ¶ 5. Respondent, a registered investment adviser, provides investment advisory services to SBIA UK in relation to certain SVF I and SVF II investments.  *Id.* ¶¶ 4, 8.  Respondent's services consist of identifying and evaluating investment opportunities, negotiating the terms of investments, managing and monitoring investments, and achieving dispositions for such investments.  *Id.* ¶ 8.

#### 2.   The Greensill Entities

Greensill Capital Pty Ltd ("GCPL") is an Australian-registered company formed in 2011 to provide supply-chain finance to corporate clients. East Decl. ¶ 8.  GCPL operated through a number of related subsidiaries (together with GCPL, "Greensill"), including (i) Greensill Capital (UK) Limited ("GCUK"), a UK based subsidiary which served as Greensill's main trading company, and (ii) Greensill Limited ("GL"), a UK based subsidiary of GCUK.  *Id.*  GL was a special purpose vehicle that operated solely for the purpose of purchasing receivables from Greensill's clients and

---

[1]  Affiliates of SVF II include (i) SVF II Abode (Cayman) Ltd ("SVF II Abode"), (ii) SVF II Wyatt Subco (Singapore) Pte Ltd ("SVF II Wyatt"); and (iii) SVF II Holdings (Singapore) Pte Ltd ("SVF II Holdings").  East Decl. ¶ 7.

1  transferring the risk of loss on those receivables to GCUK.  *Id.* ¶ 12.  In May 2019, SVF I invested

2  $526,649,687.36 in Greensill.  *Id.* ¶ 16.  SVF I invested a further $180,349,336.50 in Greensill in

3  September 2019.  *Id.*  SVF II invested $440 million in Greensill in November 2020.  *Id.* ¶¶ 18, 20.

4  Each entity in the Greensill group has entered insolvency proceedings in their respective

5  jurisdictions.  More specifically, GCUK entered administration in the UK on March 8, 2021; GCPL

6  entered administration in Australia the next day on March 9, 2021; and GL entered liquidation in

7  the UK on July 30, 2021.  *Id.* ¶ 8.

8

9          3.    <u>The Katerra Entities</u>

10       Katerra was a US-based startup in the construction industry.  East Decl. ¶ 9.  The Katerra

11  entities primarily operated through Katerra, Inc. ("<u>Katerra Inc.</u>") and a parent company incorporated

12  in the Cayman Islands ("<u>Katerra Cayman</u>", and together with Katerra Inc. and each of their affiliates

13  "<u>Katerra</u>").  *See* Dkt. No. 1-1 ("Golding Decl.") ¶ 13.  In 2018 and 2019, SVF I contributed

14  approximately $1.75 billion of financing to Katerra and became its largest capital investor (but did

15  not hold a controlling interest).  East Decl. ¶ 16.  On June 6, 2021, Katerra Inc. and thirty-two of its

16  affiliates, including Katerra Cayman, filed voluntary petitions for relief under chapter 11 of the

17  United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of

18  Texas (the "<u>Bankruptcy Court</u>").  *Id.* ¶ 24.  Those cases are pending before the Honorable David R.

19  Jones, and are jointly administered under Case No. 21-31861 (DRJ) ("<u>Texas Action</u>").

20

21          4.    <u>Credit Suisse Virtuoso SICAV-SIF</u>

22       Petitioner is an "umbrella fund" incorporated under the laws of Luxembourg for the purpose

23  of investing in various securities and other investments through multiple sub-funds.  Golding Decl.

24  ¶ 8.  One of Petitioner's sub-funds, Credit Suisse (Lux) Supply Chain Finance Fund, was designed

25  to invest primarily in notes connected to so-called supply chain finance programs, including

26  programs organized by Greensill.  *Id.* ¶ 9.

27

28

**B.      The Katerra Supply Chain Financing Transactions**

        1.      The Initial Securitization Transaction

On December 9, 2019, six Katerra entities entered into a Receivables Purchase Agreement (the "RPA") with GL, pursuant to which Katerra sold accounts receivable ("A/R") to GL. Golding Decl. ¶ 14; East Decl. ¶ 10. The risk of economic loss on the Katerra A/R was transferred from GL to GCUK, which then used a special purpose vehicle—Hoffman S.à r.l. ("Hoffman")—to securitize that risk into notes ultimately purchased by Petitioner (the "Katerra Notes"). Golding Decl. ¶¶ 15, 16. The Joint Liquidators of GL (the "Joint Liquidators") summarized the chain via which the risk of loss on the Katerra A/R was transferred from GL to Petitioner as follows:



Figure 1

East Decl. ¶ 13. The Vision Funds were generally aware that Petitioner held the Katerra Notes, but had no involvement in the securitization of the Katerra A/R by GCUK, and were not privy to the terms of the contracts between GCUK, Hoffman, Citibank, and Petitioner. *Id*.

By early 2020, Petitioner had purchased approximately $440 million of Notes backed by the Katerra receivables. Golding Decl. ¶ 16. In 2020, Katerra, in financial distress and running out of liquidity, was in default under the RPA. *See id*. ¶ 18; East Decl. ¶ 15. Given its worsening credit and liquidity constraints, Katerra hired external advisors to explore restructuring options to, among other things, create a viable capital structure, including by addressing Katerra's indebtedness under the RPA. *See* East Decl., Ex. 8 ("Liebman Decl.") ¶¶ 65, 66.

### 2. The Restructuring Transaction

Greensill approached SBG and the Vision Funds in October 2020 to solicit an injection of capital to shield Greensill's external creditors and funding sources from losses resulting from Katerra's default under the RPA, and to facilitate the restructuring of Katerra's debt obligations to GL. East Decl. ¶ 17. Ultimately, on November 10, 2020, Greensill, SBG and SVF II entered into a transaction (the "Omnibus Deed") pursuant to which: (1) SVF II agreed to purchase a $440 million convertible loan note issued by GCPL (the "CLN") (*id*. ¶ 18); (2) SVF II agreed to transfer $440 million to GCUK (*id*. ¶ 20); (3) Greensill agreed to "assume any and all losses in respect of the Katerra Notes" (*id*. ¶ 18); and (4) GCPL and GCUK agreed to procure that GL would remit any funds recovered from Katerra to SVF II, with a requirement to recover and remit at least $176 million by December 31, 2020 (*id*.) ("Restructuring Transaction").

To assume any and all losses on the Katerra Notes from Greensill's external sources of capital (e.g., Petitioner), and then remit the anticipated limited recoveries from Katerra (e.g., $176 million out of the $440 million owed) to SVF II, Greensill would need to use the $440 million from SVF II to buy back the Katerra Notes from Petitioner. That is precisely what Greensill's counsel, Allen & Overy, explained in a November 4, 2020 email: "SVF is putting Greensill in funds to the amount of $440m ***and Greensill will be able to use this to fund buy back of the [Petitioner's] notes***. That is why Greensill has the obligation to remit any funds recovered [to SVF II]." *Id*. ¶ 19. (emphasis added). Accordingly, as reflected in Figure 2 below, the intended purpose and effect of the Restructuring Transaction was to shift the ultimate risk of economic loss on the Katerra A/R from Petitioner to SVF II.



Figure 2

By late November 2020, with Katerra's financial position continuing to falter, it was apparent that Katerra could not repay Greensill even the $176 million recovery hoped for weeks earlier and which Greensill was required to transfer to SVF II under the Omnibus Deed. *Id.* ¶ 21. In order to address this issue, SVF II and Greensill agreed to amend the terms of the Restructuring Transaction to replace Greensill's obligation to collect $176 million from Katerra with an obligation to collect an equity interest in Katerra Cayman, which was all Katerra could afford at that point. *Id.* Specifically, SVF II agreed to forgo its right to receive at least $176 million in recoveries by December 31, and in exchange: (1) GCPL agreed to increase the number of shares allotted to SVF II under the CLN; (2) GL agreed to exchange its claims under the RPA for a 5% equity interest in Katerra Cayman; and (3) GL agreed to transfer that 5% equity interest to SVF II. *Id.* This agreement was effectuated via two sets of interrelated agreements.

On 23 December, 2020, Greensill and SVF II amended both the Omnibus Deed and the CLN (the "Amended Omnibus Deed" and "Amended CLN"), as per Figure 3 below. *Id.*



Figure 3

On December 30, 2020, (1) GL and Katerra entered into a Contribution and Exchange Agreement under which GL agreed to exchange its claims under the RPA for a 5% equity interest

in Katerra Cayman (the "CEA"); and (2) GL and SVF II entered into a Transfer Agreement under which GL transferred the 5% equity interest to SVF II (the "Transfer Agreement"), as per Figure 4 below. *Id.* ¶¶ 21, 22.[2] The Amended Omnibus Deed, Amended CLN, CEA, and Transfer Agreement together comprised part of the Restructuring Transaction.



Figure 4

The Omnibus Deed and the Amended Omnibus Deed both included express warranties from GCPL and GCUK that they had the power "to enter into, perform and deliver" each element of the Restructuring Transaction, and that each of those elements "[did] not and will not conflict with . . . any agreement or instrument binding upon [them]." *Id.*; *Id.*, Ex. 11 ¶ 6; *Id.*, Ex. 17 ¶ 6. Likewise, the Transfer Agreement expressly stated that GL possessed "all requisite limited company power and authority to enter into, and carry out" the transfer of Katerra equity to SVF II. *Id.*, Ex. 20 ¶ 2.

### 3.    Greensill's Failure To Buy Back The Notes

In January 2021, Respondent learned, for the first time, that Greensill had not in fact used the $440 million from SVF II to buy back the Katerra Notes from Petitioner. East Decl. ¶ 23. Instead, it subsequently became apparent that Greensill had transferred some of the $440 million to another Greensill entity incorporated in Germany, Greensill Bank AG, which was under

---

[2] *See also* Liebman Decl. ¶ 70 (acknowledging that "Katerra consummated a transaction at the end of December 2020" pursuant to which "Greensill extinguished approximately $440 million owed by Katerra under the Greensill Receivables Facility in exchange for approximately 5% of the post-equity closing in Katerra, which equity was immediately transferred by Greensill to an affiliate of SVF II in connection with a transaction in which SVF II invested $440 million in the parent company of Greensill").

investigation by the German Financial Supervisory Authority, BaFin.  *Id.*  Greensill also appears to have used some of the $440 million to "provide additional funding to the Greensill Group."  *Id.* Within three months, the Greensill entities were themselves in liquidation.  *Id.* ¶ 8.

## C.     The Texas Action

On August 7, 2021, the Joint Liquidators filed proofs of claim in the Bankruptcy Court, giving notice of several potential claims regarding the Restructuring Transaction, including claims arising under sections 238 and 423 of the UK Insolvency Act 1986 ("Insolvency Act") ("Proofs of Claim").  East Decl. ¶ 25.  On August 31, 2021, Katerra filed an objection to disallow and expunge the Proofs of Claim against each of the Katerra entities (the "Claim Objection").  *Id.* ¶ 26.  Less than two weeks later, the Joint Liquidators filed a motion to lift the automatic stay so that they could pursue their claims in England ("Lift Stay Motion").  *Id.* ¶ 28.

At a hearing on October 4, 2021, the Bankruptcy Court denied the Lift Stay Motion, ordering that the Claim Objection be heard by the Bankruptcy Court.  *Id.* ¶ 30.  During that hearing, GL's Liquidator, Mr. Andrew Charters, acknowledged in open court that "***in essence [] Credit Suisse***" (i.e. Petitioner) was funding the Joint Liquidator's claims.  *Id.* (emphasis added).

On November 15, 2021, the Bankruptcy Court ordered GL to identify all causes of action it was pursuing under the Proofs of Claim.  *Id.* ¶ 32.  On December 13, 2021, the Joint Liquidators filed a notice indicating that they were pursuing claims under § 238 of the Insolvency Act in relation to both the CEA and the Transfer Agreement against both Katerra and SVF II Cayman.  *Id.* ¶ 33.

On January 22, 2022, Respondent filed a joinder to the Claim Objection, in order to appear as a party in the Texas Action on behalf of SVF II Cayman.  *Id.* ¶ 34; *Id.*, Ex. 32 ¶ 5.  One business day later, counsel for the Joint Liquidators informed the Bankruptcy Court that they planned to withdraw the Proofs of Claim.  *Id.* ¶ 35.  On January 28, 2022, the Bankruptcy Court entered an order, permitting withdrawal of the Proofs of Claim "with prejudice."  *Id.* ¶ 36.

1

**D.      Petitioner Asserts 423 Claims Against Respondent**

2

3       Following the unsuccessful attempt by GL's Joint Liquidators to lift the stay in Texas, on

4  October 7, 2021, Petitioner's English counsel wrote to put SBG and other named SoftBank entities

5  on notice of "potential claims" asserted by Petitioner against Respondent, and nine other SoftBank

6  affiliates ("Petitioner's October 7 Letter").  East Decl. ¶ 38; *Id.*, Ex. 35 ¶ 3.  In the letter, counsel

7  represented that Petitioner was investigating "potential" claims "against one or more" SoftBank

8  entities, but did "not yet have all of the information or background." *Id.*, Ex. 35 ¶ 94.  Nevertheless,

9  Petitioner's English counsel asserted that Petitioner was "likely to have claims against SoftBank

10  Entities," including at least five different causes of action, one of which involved remedies pursuant

11  to § 423 of the Insolvency Act. *Id.*, Ex. 35 ¶ 95.  The letter also requested a broad range of documents

12  and information. *Id.*, Ex. 35 ¶¶ 97, 98.

13       Respondent's counsel responded to the letter on November 1, 2021 by noting that Petitioner

14  had failed to particularize its claims as required under English law, and failed to provide a basis for

15  Petitioner's broad request for documents. *Id*. ¶ 41.  On November 12, 2021, Petitioner's English

16  counsel responded by largely ignoring the points raised in Respondent's November 1 letter and

17  repeating its sweeping document requests. *Id*. ¶ 42.  On November 30, 2021, Respondent's counsel

18  replied, reiterating that Petitioner had not identified a basis for the document requests and had failed

19  to address the myriad substantive flaws in Respondent's alleged claims. *Id*. ¶ 43; *Id.*, Ex. 40.

20

**E.      The 1782 Applications**

21

22       On December 23, 2021, Petitioner filed the instant § 1782 *ex parte* application seeking broad

23  evidence relating to the involvement of SBG, Respondent, SBIA UK, and the Vision Funds in the

24  Katerra Restructuring for "an anticipated court proceeding in England" against, "among potentially

25  other parties," SBG, the Vision Funds, SVF Abode, SVF II Abode, and SVF Habitat (collectively,

26  "SoftBank Defendants").  *See* Dkt. No. 1 ("Petitioner Mem.") at 5, 26, 29–30.  The Court granted

27  the application on January 4, 2022, without prejudice to Respondent bringing a motion to quash or

28

modify the subpoena.  Dkt. No. 6.  On February 10, 2022, Petitioner sent the SoftBank Defendants another letter setting out further details of and revisions to its purported 423 Claim.  East Decl. ¶ 47.

## III.    LEGAL STANDARD

A district court has statutory authority to grant a § 1782 application where "(1) the discovery sought is from a person residing in the district court to which the application is made; (2) the discovery is for use in a proceeding before a foreign tribunal; and (3) the applicant is a foreign or international tribunal or an 'interested person.'"  *In re Ex Parte Apple Inc.*, 2012 WL 1570043, at *1 (N.D. Cal. May 2, 2012).  However, even where the Court has statutory authority to authorize a subpoena under § 1782, it retains the discretion not to do so.  The Supreme Court has articulated four non-exhaustive factors to help district courts determine whether to exercise their discretion in granting § 1782 applications, including:

> (1) whether the "person from whom discovery is sought is a participant in the foreign proceeding"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) whether the discovery request is an "attempt to circumvent proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the discovery requested is "unduly intrusive or burdensome."

*Id.* (quoting *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264–65 (2004)).

## IV.    ARGUMENT

### A.    PETITIONER FAILS TO SATISFY THE § 1782 STATUTORY REQUIREMENTS

#### 1.    There Is No "Foreign Proceeding," And It Is Highly Unlikely That Petitioner Will Ever Be Able To Bring One

On December 23, 2021, Petitioner represented to the Court that it would file its 423 Claim in England "within the coming weeks."  Petitioner Mem. at 11.  More than eight weeks later, no such claim has been filed.  This is not particularly surprising given that, as Petitioner readily admits, "leave of the English court is required to commence a claim under Section 423" and "leave of the court will be required to effect service" on the SoftBank entities, none of whom reside in England.  Golding Decl. ¶¶ 71, 72.  As of the date of this motion, Petitioner has neither sought nor obtained leave to commence the 423 Claim, or leave to serve outside the jurisdiction.  East Decl. ¶ 46.

1    While a foreign proceeding need not be "pending" in order to satisfy the second statutory

2    requirement under § 1782, a "dispositive ruling" must be "within reasonable contemplation." *Intel*,

3    542 U.S. at 247, 259.   Unsurprisingly, where a petitioner fails to establish its ability to assert a

4    foreign claim, a dispositive ruling is not within reasonable contemplation.  *In re Intel Corp.*

5    *Microprocessor Antitrust Litig.*, 2008 WL 4861544, at *12 (D. Del. Nov. 7, 2008) (rejecting 1782

6    discovery where petitioner failed to establish standing to bring either of its purported foreign

7    actions); *Igbonwa v. Facebook, Inc.*, 2019 WL 109443, at *2 (N.D. Cal. Jan. 4, 2019) (rejecting

8    1782 discovery where petitioner failed to establish standing to assert purported foreign claims).

9

10    In this case, Petitioner has not—and cannot—establish its ability to prosecute the 423 Claim

11    in England against the SoftBank entities.  As explained by Richard Hacker QC, an expert on English

12    insolvency law, the aforementioned leave requirements are not mere formalities.  Hacker Decl. ¶¶

13    4–7; 82–154.  Rather, they are genuine jurisdictional hurdles which, in Hacker's opinion, Petitioner

14    is "highly unlikely" to clear.  *Id.* ¶¶ 9, 82, 127.

15

16    (a)    Leave To Proceed Under § 423 Is Likely To Be Denied

17    Where a debtor company is separately involved in a formal insolvency process—as is the

18    case with GL in England—Petitioner must apply to an English court for leave to bring a § 423 claim

19    as a "victim." *Id.* ¶¶ 64, 72.  Under applicable English law, a "victim" is a party that was prejudiced

20    by the debtor's transaction.  *Id.* ¶ 99.  To obtain leave to apply as a victim, Petitioner must convince

21    the court it has a realistic prospect of establishing that (1) the challenged transaction is within the

22    scope of § 423, and (2) there is "good reason" for Petitioner to bring the proceedings notwithstanding

23    the Joint Liquidators' decision not to do so.  *Id.* ¶ 83.[3]   As Hacker explains, this is ordinarily

24    demonstrated by a fully pleaded claim, but Petitioner has produced no pleading or evidence here,

25

26

27    [3]  Despite its repeat letters to the SoftBank Defendants and filings with the Court in the present
     Action, Petitioner notably has failed to even attempt to explain why there is "good reason" for
28    Petitioner to bring its proceedings despite the liquidators' determination not to do so.  Hacker Decl.
     ¶ 87.

and has provided no cogent reasoning to support its *ipse dixit* assertions that the CEA and Transfer Agreement were transactions at an undervalue that were entered into for an improper purpose. *Id.* ¶ 84. Further, Petitioner has failed to address why the 423 Claim is merited despite the Joint Liquidators deciding not to pursue any claims against the SoftBank entities. *Id.* ¶¶ 115–17. This is particularly notable given that the liquidator is considered by English courts to be the "proper party" to pursue a § 423 claim. *Id.* ¶¶ 77, 110–13. In these circumstances, an English court is "highly unlikely" to grant leave to Petitioner to pursue the 423 Claim. *Id.* ¶¶ 9, 82, 127.

Moreover, even if Petitioner were to subsequently formulate an actual claim for the English court, leave to proceed would likely be denied because:

- The CEA and Transfer Agreements were not "transactions at an undervalue." English courts take an expansive view of what constitutes a "transaction" for purposes of a § 423 claim—looking at the "commercial reality" of the situation—and will treat a series of linked agreements as a single transaction for purposes of assessing value. *Id.* ¶¶ 91, 92. In this case, the CEA and the Transfer Agreement were clearly part of a broader transaction in which Greensill received $440 million from SVF II in exchange for agreeing to remit any Katerra recoveries to SVF II, and there is no suggestion that the value provided to SVF II exceeded $440 million. *Id.* ¶ 92.[4]

- Petitioner is not a "victim" for purposes of § 423. In order to bring proceedings under § 423, a party must have a "claim" that is prejudiced by the challenged transaction. *Id.* ¶ 99. In this case, Petitioner has not articulated any claim against GL, and it is difficult to see what claim Petitioner could possibly have, given the number of separate entities that sit between GL and Petitioner in

---

[4] Moreover, even if the CEA and Transfer Agreement were viewed in isolation (which they should not be), they would not constitute transactions at an undervalue, because GL transferred the economic benefit associated with the RPA to GCUK at inception. Accordingly, GL's claims under the RPA—which it transferred to Katerra under the CEA with GCUK's full knowledge and approval—were worth nothing to GL at the time of transfer. Hacker Decl. ¶¶ 96–98.

the securitization chain (*see supra* Figure 1), and given Petitioner has no creditor rights in respect of the Katerra Notes.  *Id.* ¶ 100.

- <u>The CEA and Transfer Agreement were not entered into for an improper purpose.</u>  In order to bring proceedings under § 423, a transaction must have been entered into by the debtor *for the purpose* of putting assets beyond the reach of the victim.  *Id.* ¶¶ 65, 101.  It is not sufficient that a transaction may ultimately have that effect; it is the purpose that matters.  *Id.* ¶ 102–06.  Here, there is no basis to suggest that GL entered into the CEA or the Transfer Agreement for the purpose of putting assets beyond Petitioner's reach.  On the contrary, GL was merely following instructions from the party to whom it had already transferred the economic benefit associated with the claims under the RPA regarding how those claims should be dealt with.  *Id.* ¶¶ 12, 92, 96.  At most, any effect on Petitioner was an unintended "collateral consequence," which is insufficient to establish an improper purpose under English law.  *Id.* ¶¶ 103-06.

- <u>Petitioner seeks a remedy that exceeds the statutory framework.</u>  In its purported § 423 Claim, Petitioner seeks a direct payment to it by the Softbank Defendants, circumventing a payment to the GL estate altogether, contrary to the nature of § 423 as a class remedy.  *Id.* ¶ 107.  Critically, this relief would put Petitioner in a *better* position than if the impugned transaction had not been executed; it is impermissible under English law for Petitioner to receive a greater distribution than it would have received in the insolvency process.  *Id.* ¶¶ 107, 118.

- <u>The Joint Liquidators declined to pursue claims under § 423.</u>  The proper claimants to bring a § 423 claim are the Joint Liquidators.  *Id.* ¶¶ 110-17.  In this case, the Joint Liquidators (i) included both a § 423 claim and a § 238 claim—which is substantially similar to a § 423 claim (*id.* ¶¶ 33, 50)—in respect of the CEA in their Proofs of Claim in the Texas proceeding (*id.* ¶ 31–33); (ii) subsequently clarified that they were pursuing a § 238 claim against both Katerra and SVF II in relation to the CEA and Transfer Agreement (*id.* ¶ 35); and (iii) ultimately withdrew the Proofs

of Claim—including both the § 423 claim and the § 238 claim—*with prejudice* (*id.* ¶ 40).  In this circumstance, the English court would expect and require Petitioner to explain why it should be allowed to proceed with its own § 423 claim, especially in circumstances where Credit Suisse was funding the Joint Liquidators' claims in the Texas proceeding.  *Id.* ¶¶ 35, 110–17.

(b)      <u>Leave To Serve The SoftBank Entities Is Likely To Be Denied</u>

The putative SoftBank Defendants in Petitioner's 423 Claim are domiciled outside the jurisdiction of English courts.  *Id.* ¶ 129.  Accordingly, Petitioner would need to obtain leave to "serve out" its claim to establish *in personam* jurisdiction.  *Id.*  To obtain this leave, Petitioner must establish (1) there is a "serious issue to be tried on the merits"; (2) there is a "sufficient connection" between the SoftBank Defendants and England and Wales; and (3) "England is *clearly* or *distinctly* the appropriate forum for the trial of the dispute[.]"  *Id.* ¶ 131 .

As Hacker explains, for the same reasons Petitioner is unlikely to be granted leave to bring a victim claim under § 423 (*infra* pp. 13–15), it is unlikely to be able to show there is a "serious issue to be tried."  *Id.* ¶¶ 133, 134.  Further, Petitioner is unlikely to satisfy the "sufficient connection" or "appropriate forum" requirements, because: (i) none of the SoftBank Defendants, the Katerra entities or Petitioner are incorporated in England (East Decl. ¶ 45); (ii) the CEA is governed by the laws of the State of New York (Hacker Decl. ¶ 142); (iii) the Transfer Agreement is governed by the laws of the State of Delaware and concerns shares legally situated in the Cayman Islands (*id.*); (iv) the Katerra entities are in Chapter 11 bankruptcy proceedings in the U.S. (*id.*); and (v) the U.S. Bankruptcy Court refused to lift the stay to permit the Joint Liquidators to bring an undervalue claim in England (*id.*).  The lone English connection—GL's incorporation in England— is "not one of the standard [] factors the Court has regard to, as these are concerned principally with <u>the defendant's</u> connection with England."  *Id.* ¶ 143 (emphasis in original).  Moreover, Petitioner has stated that it will not seek relief from GL.  Golding Decl. ¶ 70.

(c)      <u>Petitioner's Counterarguments Are Meritless</u>

Petitioner asserts a foreign proceeding is within "reasonable contemplation" because it has retained counsel and is purportedly preparing to file suit in the UK. Petitioner Mem. at 11–13. However, subjective intent to pursue legal action is insufficient to satisfy the "for use" statutory requirement—the foreign proceeding cannot be speculative, and Petitioner "must present to the district court some concrete basis from which it can determine that the contemplated proceeding is more than just a twinkle in counsel's eye." *Certain Funds, Accts. &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113,123–24 (2d Cir. 2015) (rejecting 1782 discovery where petitioner alleged "they had retained counsel and were discussing the *possibility* of initiating litigation") (emphasis in original). Section 1782's statutory requirements cannot be satisfied by "purely hypothetical proceedings." *In re Harbour Victoria Inv. Holdings Ltd. Section 1782 Petitions*, 2015 WL 4040420, at *8 (S.D.N.Y. June 29, 2015). Without having sought—let alone obtained—leave to bring its 423 Claim or serve the SoftBank Defendants outside the jurisdiction, Petitioner offers no "concrete basis" on which the Court could determine that its 423 Claim is more than purely speculative.[5]

2.     Petitioner's Subpoena Is A Pre-Litigation Fishing Expedition That Is Prohibited Under § 1782

"The Ninth Circuit instructs that a district court 'should deny the [1782] request' if it 'suspects that the request is a fishing expedition.'" *In re Pioneer Corp.*, 2018 WL 4963126, at *5 (C.D. Cal. Aug. 27, 2018) (quoting *In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.*,

---

[5] The case law Petitioner cites in support of its position is unavailing. Petitioner Mem. at 13. In *Khrapunov v. Prosyankin*, the Ninth Circuit remanded the application to the district court and instructed it to consider "the relative likelihood" of petitioner satisfying any requisite standard to "reopen[] the English proceedings," and whether the 1782 discovery "will actually assist [petitioner] in satisfying that standard." 931 F.3d 922, 925–26 (9th Cir. 2019). Applying this standard, Petitioner's 1782 subpoena should be quashed, because it is highly unlikely Petitioner will be granted leave to proceed with the 423 Claim, or to serve the SoftBank Defendants out of the jurisdiction. Meanwhile, in both *In re Eurasian Nat. Res. Corp., Ltd.*, 2018 WL 1557167, at *2 (N.D. Cal. Mar. 30, 2018) and *In re Tovmasyan*, 2021 WL 3737184, at *4 (D.P.R. Aug. 20, 2021), there was no dispute as to petitioner's standing to assert its claim in the purported foreign proceeding (and therefore no dispute as to petitioner's ability to "use" the 1782 discovery sought).

634 F.3d 557, 563 (9th Cir. 2011)); *In re Certain Funds, Accts., &/or Inv. Vehicles Managed by Affiliates of Fortress Inv. Grp. LLC*, 2014 WL 3404955, at *7 (S.D.N.Y. July 9, 2014) ("[B]ecause we are concerned that this action is more akin to a fishing expedition, we conclude that petitioners may not rely on their planned proceedings to satisfy the statutory requirement that the material be for 'use' in a foreign proceeding."); *see also Ayyash v. Crowe Horwath LLP*, 2018 WL 2976017, at *3 (S.D.N.Y. June 13, 2018) (denying § 1782 application where court was "concerned [the applicant] [wa]s using the § 1782 petition as a fishing expedition to determine if it should pursue litigation against [the discovery target]").

Petitioner's § 1782 subpoena has all the hallmarks of a pre-litigation fishing expedition:

1. Notwithstanding its representation to the Court that it would commence proceedings in England "within the coming weeks," more than eight weeks later, Petitioner has neither commenced proceedings nor sought leave to do so (or sought leave to serve the SoftBank Defendants outside the jurisdiction). *See supra* pp. 12–17.

2. By representing that it would commence proceedings in England mere weeks after filing its 1782 Application, Petitioner effectively acknowledged that it does not, in fact, need the requested discovery in order to bring its 423 Claim.

3. Petitioner acknowledged that it "may have other potential claims against SoftBank" which it is "continuing to investigate," and that "the Requested Documents . . . are relevant to these additional claims." Golding Decl. ¶¶ 73,75.

4. As discussed further below, *see infra* pp. 23–24, Petitioner is seeking broad-based discovery that appears designed to try and *identify* potential claims, rather than provide specific information required to commence Petitioner's putative 423 Claim.

"[C]ourts must guard against efforts by parties to engage in fishing expeditions before actually launching litigation." *In re Certain Funds*, 2014 WL 3404955, at *6.  It is not appropriate

1  for parties to "use § 1782 to investigate whether litigation is possible in the first place, putting the

2  cart before the horse."  *Id.*; *see also In re Sargeant*, 278 F. Supp. 3d 814, 823 (S.D.N.Y. 2017)

3  (rejecting 1782 discovery because "the potential proceedings that [petitioner] may (or may not)

4  bring depending on what the discovery reveals are not 'within reasonable contemplation.'").

5  Petitioner's subpoena should therefore be quashed on the basis that the requested material is not "for

6

7  use" in a "proceeding before a foreign tribunal," as required by § 1782.

8  **B.    THE *INTEL* FACTORS WEIGH HEAVILY IN FAVOR OF VACATING**
   **THE ORDER AND QUASHING THE SUBPOENA**

9

10  1.    <u>*Intel* Factor 1: The Requested Evidence Can Be Obtained From Parties In
    The Yet-To-Be-Filed English Proceeding</u>

11  The "key issue" under the first *Intel* factor is "whether the material is obtainable through the

12  foreign proceeding."  *In re: Ex Parte Application Varian Med. Sys. Int'l AG*, 2016 WL 1161568, at

13  *3 (N.D. Cal. Mar. 24, 2016).  Petitioner claims that this factor weighs in its favor because it does

14  not "***currently*** anticipate naming [Respondent] as a defendant in the English Lawsuit," and would

15

16  therefore be unable to obtain discovery from Respondent in the English proceeding.   Petitioner

17  Mem. at 10, 14–15 (emphasis added).  Petitioner is wrong, for multiple reasons.

18  *First*, Petitioner's argument should be seen for what it is—a transparent attempt to satisfy

19  the first *Intel* factor while preserving Petitioner's ability to subsequently name Respondent as a

20  defendant in future English proceedings.  Before filing the instant § 1782 application, Petitioner

21  specifically identified Respondent as a putative defendant in the contemplated 423 Claim.  Indeed,

22  in its October 7, 2021 letter, Petitioner explicitly put Respondent "on notice of potential claims

23

24  against [it]" and "reserve[d] the right to bring proceedings against [Respondent]," "without further

25  notice."  Dkt. No. 1-3 ¶¶ 2 n.2, 3, 100.  If Respondent is named as a defendant in the 423 Claim—

26  consistent with Petitioner's earlier threats—then Petitioner would be able to seek the requested

27  discovery from Respondent via the English proceeding.  Blair Decl. ¶¶ 26-29 (declaring that parties

28  to English proceedings routinely obtain discovery from their opponents).

*Second*, even if Respondent is not named as a defendant, Petitioner should be able to obtain much of the requested discovery from the named defendants in the English proceeding—SBG, the Vision Funds, and GL—for the simple reason that Petitioner's requests are directed almost exclusively to those entities.  For example, Requests 2, 3 and 7 seek "communications [Respondent] engaged in" concerning various topics related to the Restructuring Transaction.  Petitioner Mem. at 29, 30.  Given that SBG, the Vision Funds, and GL were the actual parties to the Restructuring Transaction, Petitioner should be able to obtain this information directly from them.  Blair Decl. ¶¶ 26-29.  Similarly, Requests 4, 5 and 6 seek "[d]ocuments concerning the consideration, if any, provided . . . by SoftBank"—defined to include SBG and the Vision Funds—in connection with the Restructuring Transaction.  Petitioner Mem. at 29, 30.  Once again, this is material that can—and should—be sought in the first instance from the actual defendants, as opposed to a third-party such as Respondent.  *See MetaLab Design Ltd. v. Zozi Int'l, Inc.*, 2018 WL 368766, at *3 (N.D. Cal. Jan. 11, 2018) (denying § 1782 discovery of communications with party to foreign proceeding); *Baxalta Inc. v. Genentech, Inc.*, 2016 WL 11529803, at *6 (N.D. Cal. Aug. 9, 2016) (denying § 1782 discovery of documents likely to be possession of party to foreign proceeding).

*Third*, to the extent the Vision Funds do not possess the requested documents themselves, they would nevertheless be able to obtain them from Respondent and produce them in the English proceeding, if required to do so.  *See* O'Connor Decl. ¶¶ 9–11 (confirming that Respondent would be required to provide the documents referenced in the subpoena to the Vision Funds pursuant to contractual information access rights).  The requested documents are therefore within the "control" of the foreign defendants and can be obtained via the English proceeding, Blair Decl. ¶ 69, thus obviating the need for § 1782 relief.  *See In re: Varian*, 2016 WL 1161568, at *4 (the first *Intel* factor "militates against allowing § 1782 discovery when the petitioner effectively seeks discovery from a participant in the foreign tribunal even though it is seeking discovery from a related, but

technically distinct entity") (internal citation omitted); *see also Schmitz v. Bernstein Liebhard & Lifshitz, LLP.*, 376 F.3d 79, 85 (2d Cir. 2004) (affirming denial of § 1782 discovery against US law firm representing foreign defendant); *In re Schlich*, 2016 WL 7209565, at \*4 (D. Mass. Dec. 9, 2016) (denying § 1782 discovery against employees of defendant in foreign proceeding).

*Finally*, the fact that Petitioner "has not even *tried* to obtain any of the discovery sought here by way of [English] discovery tools . . . favors quashing the subpoena" under *Intel* Factor 1.  *In re Degitechnic*, 2007 WL 1367697, at \*4 (W.D. Wash. May 8, 2007) (emphasis in original).

> 2.   *Intel* Factor 2: The Non-Existent Nature Of Petitioner's 423 Claim Weighs Against Discovery

Under *Intel* Factor 2, courts "may take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance."  *Intel*, 542 U.S. at 264.  All of these considerations counsel against granting discovery in this case.

"To determine whether the character of the foreign proceeding favors permitting discovery, courts analyze how far along the foreign suit is in the discovery process." *HT S.R.L. v. Velasco*, 125 F. Supp. 3d 211, 223 (D.D.C. 2015) (internal citation omitted).  When foreign litigation "may not even be at the stage in which discovery would be appropriate," courts are "wary of granting discovery under § 1782" because "it appears that the party seeking discovery may be using the United States statutes and federal court system to 'jump the gun' on discovery in the underlying foreign suit." *Norex Petroleum Ltd. v. Chubb Ins. Co. of Canada*, 384 F. Supp. 2d 45, 54 (D.D.C. 2005).

It is presently unclear if Petitioner will even seek to commence its 423 Claim, let alone reach a stage in which discovery would be appropriate.  *See supra* pp. 12–17.  As this Court rightly observed in *In re King.com Ltd.*, 2016 WL 4364286, at \*8 (N.D. Cal. Aug. 16, 2016), proceedings that "are not presently *underway* . . . will not receive any evidence that this Court might order

produced." (emphasis in original).  Since Petitioner's non-existent foreign proceeding is clearly

incapable of receiving evidence, *Intel* Factor 2 favors denying discovery.

3.    <u>*Intel* Factor 3: The Application Seeks To Circumvent English Proof-
Gathering Restrictions And Domestic Policy</u>

"The third *Intel* factor allows courts to consider veiled attempts to circumvent foreign or

domestic policy or proof-gathering restrictions." *Baxalta*, 2016 WL 11529803, at *6 (citing *Intel*,

542 U.S. at 265).  Thus, a "perception that an applicant has 'side-stepped' less-than-favorable

discovery rules by resorting immediately to § 1782 can be a factor in a court's analysis." *In re:*

*Varian*, 2016 WL 1161568, at *5 (citing *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2013 WL

183944, at *3 (N.D. Cal. Jan. 17, 2013)).  "A party's failure to invoke local discovery procedures

remains significant, and may be considered" as well.  *In re Application for Discovery for Use in*

*Foreign Proceeding Pursuant to 28 U.S.C. §1782*, 2019 WL 168828, at *11 (D.N.J. Jan. 10, 2019).

Petitioner's 1782 Application is plainly an attempt to circumvent English policy and proof-

gathering restrictions:

1.  Petitioner has sought § 1782 discovery without even commencing English proceedings (or

seeking the necessary leave to do so).  *See Aventis Pharma v. Wyeth*, 2009 WL 3754191, at *1

(S.D.N.Y. Nov. 9, 2009) (holding a § 1782 application "was untimely given the current

procedural posture of the case before the French Courts").

2.  Petitioner would not be able to obtain pre-action discovery of the type sought in its 1782

subpoena in England.  Blair Decl. ¶ 44–47.  The third *Intel* factor exists to prevent precisely this

type of conduct.  *In re Kreke Immobilien KG*, 2013 WL 5966916, at *6 (S.D.N.Y. Nov. 8, 2013)

("It would create a perverse system of incentives—one counter to the efficiency and comity

goals of Section 1782—to encourage foreign litigants to scurry to U.S. courts to preempt

discovery decisions from tribunals with clear jurisdictional authority.").

3.  Petitioner acknowledges that five of the eight document requests are directed at *SoftBank's* knowledge regarding, and role in, the Restructuring Transaction, which is only "relevant to the English court's consideration of the *form of relief* it grants pursuant to the Section 423 Claim" (if any).  Golding Decl. ¶¶ 77–83 (emphasis added).  Consistent with this admission, Hacker explains that the discovery sought by Petitioner is neither relevant nor necessary to plead a § 423 claim.  Hacker Decl. ¶¶ 155–63.  Accordingly, Petitioner should not be permitted "to prematurely gather discovery" that would only be relevant for a later stage of the foreign proceeding.  *Siemens AG v. W. Digital Corp.*, 2013 WL 5947973, at *4 (C.D. Cal. Nov. 4, 2013) (denying § 1782 damages discovery where foreign proceeding was still in the liability stage).

For all these reasons, *Intel* Factor 3 weighs heavily against discovery.

### 4.  *Intel* Factor 4: The Subpoena Is Overly Intrusive And Burdensome

The fourth *Intel* Factor considers whether the requested discovery is "unduly intrusive or burdensome."  *Intel*, 542 U.S. at 265.  "Requests are unduly intrusive and burdensome where they are not narrowly tailored, request confidential information and appear to be a broad 'fishing expedition' for irrelevant information."  *In re Ex Parte Application of Qualcomm Inc.*, 162 F. Supp. 3d 1029, 1043 (N.D. Cal. 2016).  In this case, the purpose and breadth of Petitioner's § 1782 subpoena demonstrates that it is nothing more than a blatant fishing expedition to identify potential claims against Respondent and other SoftBank entities:

1.  Petitioner acknowledges that it does not need the requested documents to commence its 423 Claim (*see supra* p. 18);

2.  Petitioner admits that the majority of the requested documents are relevant only to the question of what relief should be granted by the English court (if the as-yet unfiled English proceeding ever gets that far) (*see supra* p. 22);

3.  Petitioner admits that it intends to use the requested documents to pursue additional, as yet unparticularized, claims against Respondent and other SoftBank entities (*see supra* p. 18);

4. To the extent any of the requested documents are relevant, they could be obtained from one of the putative defendants, rather than Respondent (*see supra* pp. 19–20);

5. The breadth of Petitioner's Requests belies their true purpose as a fishing expedition:

- The Requests cover a nine-month time period, including five months *after* the completion of the final leg of the Restructuring Transaction.  Petitioner Mem. at 29.

- Request 8 seeks "over 2,000 documents" that Respondent previously "produced to Katerra in connection with the Katerra Softbank Investigation," *id.* at 30; Golding Decl. ¶ 83, notwithstanding Petitioner's acknowledgement that the investigation was not narrowly tailored, but was instead a comprehensive investigation intended "to determine whether Katerra possessed any cognizable claims against Softbank."  Petitioner Mem. at 10.

- Requests 2, 3 and 4 seek information concerning a "Security Release Agreement" which, according to Petitioner's latest letter, is not even being challenged in its 423 Claim.  East Decl., Ex. 44 ¶ 51.

- Requests 4, 5, and 6 seek documents concerning the consideration provided in connection with the Restructuring Transaction from "SoftBank Group Corp. and all of its subsidiaries, divisions, affiliates—including but not limited to [Petitioner], SB Investment Advisers (UK) Ltd., and any and all funds or other entities that make up SoftBank's 'Vision Fund'— and all present and former trustees, officers, directors, managers, administrators, employees, representatives, agents, and all other persons acting for and on their behalf" as well as "*any other entity*."  Petitioner Mem. at 26, 29–30 (emphasis added).

- Requests 2, 3, 7, and 8 seek communications involving "[Petitioner], collectively with its predecessors, successors, divisions, subsidiaries and affiliates; each other person directly or indirectly, wholly or in part, owned or controlled by it; each partnership or joint venture to which it is a party; and all present and former directors, officers . . . and employees."  *Id.*

1

## C.   THE SUBPOENA SHOULD BE QUASHED UNDER RULE 45

The subpoena should also be quashed under Federal Rule of Civil Procedure 45, which "governs discovery of non-parties." *In re Rule 45 Subpoenas Issued to Google LLC & LinkedIn Corp. Dated July 23, 2020*, 337 F.R.D. 639, 645 (N.D. Cal. 2020). "The scope of allowable discovery under Rule 45 is the same as the scope of discovery permitted under Rule 26(b)." *Id.* (internal citation omitted). Accordingly, courts "must limit the discovery sought if it is unreasonably duplicative, if it can be obtained from a source that is more convenient or less burdensome, or if the burden of producing it outweighs its likely benefit." *Chevron Corp. v. Donziger*, 2013 WL 4536808, at *4 (N.D. Cal. Aug. 22, 2013) (citing Fed. R. Civ. P. 26(b)(2)(C)).

As explained above, the subpoena seeks documents that go well beyond what is relevant for purposes of pleading a § 423 claim, and could in any event be obtained from parties to the proceeding (if it is ever commenced). *See supra* pp. 19–20. In circumstances "where plaintiffs have not shown they attempted to obtain documents from the defendant in an action prior to seeking the documents from a non-party, a subpoena duces tecum places an undue burden on a non-party." *Soto v. Castlerock Farming & Transp., Inc.*, 282 F.R.D. 492, 505 (E.D. Cal. 2012); *see also Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 577 (N.D. Cal. 2007).

## D.   ALTERNATIVELY, THE COURT SHOULD STAY ENFORCEMENT OF THE SUBPOENA

If the Court does not quash the subpoena and vacate its *ex parte* order, the subpoena should at the very least be stayed until Petitioner obtains the necessary leave to commence proceedings in England and attempts to procure the requested documents through the English discovery process. *Application Pursuant to 28 U.S.C. §1782 by Nikon Corp. v. GlobalFoundries U.S., Inc.*, 2017 WL 4224770, at *2–3 (N.D. Cal. Sept. 22, 2017) (a court may stay § 1782 discovery to protect a respondent from "annoyance, embarrassment, oppression, or undue burden or expense"). Courts can stay § 1782 discovery when a stay will resolve issues relating to the § 1782 statutory

requirements and the *Intel* discretionary factors, clarify the scope of discovery, and not prejudice the applicant. *See In re de Armas*, 2018 WL 1863748, at *6–7 (S.D. Fla. Mar. 1, 2018), *report and recommendation adopted*, 2018 WL 1859343 (S.D. Fla. Mar. 15, 2018).

Staying enforcement of the subpoena until Petitioner commences its 423 Claim and seeks discovery in that proceeding will resolve whether the English court will grant Petitioner the necessary leave to pursue the 423 Claim and serve the Softbank Defendants outside the jurisdiction, and whether the documents requested are otherwise obtainable from the parties to the English proceeding.  Such a stay would not prejudice Petitioner because it would be lifted if and when Petitioner can actually use the documents in the English proceeding.  Accordingly, this case, and the resulting Subpoena, should at the very least be stayed to allow the Court to "benefit from a clearer picture" of the 423 Claim.  *In re Pinchuk*, 2014 WL 1328484, at *5 (S.D. Fla. Mar. 31, 2014); *In re de Armas*, 2018 WL 1863748 (staying § 1782 discovery until the applicant filed the foreign action and sought discovery in that proceeding); *In re Application of Alves Braga*, 789 F. Supp. 2d 1294 (S.D. Fla. 2011) (staying § 1782 discovery pending resolution of foreign proceedings).

## V.    **CONCLUSION**

For the reasons stated herein, Respondent respectfully requests that the Court vacate its January 4, 2022 Order permitting discovery under § 1782 and quash the resulting subpoena served on Respondent, or, alternatively, stay both this case and enforcement of the subpoena until Petitioner commences its 423 Claim and first attempts to obtain the requested discovery in that proceeding.

1  DATED: February 18, 2022                    Respectfully submitted,

2

3                                                   By  /s/ Melissa Baily

4                                                        QUINN EMANUEL URQUHART &
                                                          SULLIVAN, LLP
5                                                          Melissa Baily (Bar No. 237649)
                                                           melissabaily@quinnemanuel.com
6                                                        50 California Street, 22nd Floor
                                                        San Francisco, California 94111-4788
7                                                        Telephone:    (415) 875-6600
                                                        Facsimile:     (415) 875-6700
8

9                                                        *Attorneys for SB Investment Advisers (US), Inc.*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28