# EXHIBIT 35
# TO DECLARATION OF
# RICHARD CHARLES EAST

# Freshfields Bruckhaus Deringer

By Email & Post

**London**
Freshfields Bruckhaus Deringer LLP
100 Bishopsgate
London EC2P 2SR
T   +44 20 7936 4000 (Switchboard)
     +44 20 7832 7416 (Direct)
F   +44 20 7108 7416
LDE No 23
E   neil.golding@freshfields.com
www.freshfields.com

**Our Ref**
175843-0001 NAG

Mr Timothy Mackey
Group Compliance Officer
SoftBank Group
1-7-1, Kaigan
Minato-Ku
Tokyo 105-7537

7 October 2021

Dear Mr Mackey

**Claim of Credit Suisse Virtuoso SICAV-SIF (an Investment Company with Variable Capital under Luxembourg law, SICAV), acting in respect of its sub-fund, Credit Suisse (Lux) Supply Chain Finance Fund (the "Fund")[1]**

1.  We are sending this to you in your capacity as Group Compliance Officer at SoftBank Group ("**SBG**"), and in so doing are also giving notice to each of the SoftBank Entities listed at Schedule 1. Should you require us to write separately to each of the relevant SoftBank Entities, please let us know.

2.  We act for the Fund which, as you are aware, invested in notes with an aggregate principal value of just under US$440 million issued by Hoffman S.à.r.l.'s Compartment MZ ("**Hoffman**") in late 2020 (the "**Notes**"). The Notes have defaulted. The underlying Relevant Claims backing the Notes were released and the security for the Notes was rendered worthless as a result of transactions entered into in connection with the refinancing and restructuring of Katerra Inc. (Cayman) ("**Katerra Cayman**") and its affiliates (collectively, "**Katerra**") which was facilitated by SBG (and, together with its affiliates, including entities connected to the Vision Funds, the "**SoftBank**

---

[1]   Our understanding is that the Nova HIF fund formerly held Fairymead Notes, but only the Fund presently does so.

Freshfields Bruckhaus Deringer LLP is a limited liability partnership registered in England and Wales with registered number OC334789. It is authorised and regulated by the Solicitors Regulation Authority (SRA no. 484861). For further regulatory information please refer to www.freshfields.com/support/legal-notice.

A list of the members (and of the non-members who are designated as 'partners') of Freshfields Bruckhaus Deringer LLP is available for inspection at its registered office, 100 Bishopsgate, London EC2P 2SR. Any reference to a 'partner' means a member, or a consultant or employee with equivalent standing and qualifications, of Freshfields Bruckhaus Deringer LLP or any associated firms or entities.

**Freshfields Bruckhaus Deringer**

**Entities**")[2] in 2020. As explained below, SoftBank Entities were instrumental in the refinancing and restructuring, despite the fact that they knew or should have known that a central component of it would violate the Note Trustee's rights in respect of the Notes and inevitably cause loss to the Fund.

3.  We write to put you on notice of potential claims against SoftBank Entities and to seek a full explanation of the conduct of those SoftBank Entities in relation to these matters.

**Executive summary[3]**

*The Katerra Programme*

4.  On 9 December 2019, Katerra Delaware entered into an RPA with Greensill Ltd under which Katerra sold Receivables to Greensill Ltd. Greensill Ltd granted participations in respect of its rights under the RPA and security to another Greensill entity, GCUK, and GCUK assigned all its rights in that regard to a special purpose vehicle, Hoffman, which securitised those rights and issued notes purportedly backed by Relevant Claims. Greensill Capital Securities Ltd distributed these notes to the Fund (which holds the underlying economic interest in the Notes), which in this manner funded the financing of Katerra. The principal value of the Fund's investment in the Notes was just under US$440 million.

5.  SoftBank Entities were invested in Greensill since 2019, in Katerra since 2018 and in the Fund between March and July 2020. Through such investments and the information they received from CSAM and Greensill, the SoftBank Entities were aware of the nature of the Fund's investments, and the mechanics of the securitisation.

---

2 The SoftBank Entities, as referred to herein, include but are not limited to the following SBG affiliates currently believed to have been involved in the events described in this letter: SoftBank Vision Fund LP, SoftBank Vision Fund II-2 LP, SVF Abode (Cayman) Limited, SVF II Abode (Cayman) Limited, SVF Habitat (Cayman) Limited, SB Investment Advisers (UK) Limited, SB Investment Advisers (US) Inc., SVF II Wyatt Subco (Singapore) Pte. Limited, and SVF II Holdings (Singapore) Pte. Ltd.

3 All capitalised terms referred to in the Executive Summary are defined in the main body of this letter.

Freshfields Bruckhaus Deringer

### Mr Masayoshi Son's personal knowledge and involvement in the Katerra programme

6. When the RPA was entered into, SoftBank Entities had invested in both Katerra and Greensill. Further, Greensill financed various SoftBank portfolio companies, including, in December 2019, Katerra (of which SVF was, at that time, the largest capital investor). However, by early 2020, Katerra had defaulted on the covenants in the RPA.

7. Around the time the RPA was entered into, SoftBank Entities provided credit support to Greensill Ltd. Mr Masayoshi Son was personally involved in the discussions surrounding providing such credit support; an email from Lex Greensill dated 19 December 2019 states that, "*Masa was personally sighted on the issue and gave me his personal commitment that the guarantee will be issued…(I have now done so and Masa was explicit about his support.*)". Thus, Mr Masayoshi Son was aware of the Katerra programme from, or very soon after, its creation.

### The Katerra restructuring and refinancing, SoftBank's role in it and Mr Masayoshi Son's knowledge of it

8. Unbeknown to the Fund, just nine months after entry into the RPA, SoftBank Entities facilitated and drove the restructuring of Katerra which violated the Note Trustee's rights in respect of the Notes and has caused loss to the Fund. While Katerra continued to sell Receivables to Greensill Ltd until mid-December 2020 and Hoffman issued new Notes to the Fund (replacing older notes which fell due), from at least September 2020 SoftBank Entities were instrumental in the planning of an extensive financial restructuring of Katerra.

9. On 10 November 2020 SoftBank Entities entered into the November Omnibus Deed with Greensill, which purported to oblige Greensill to account to the Vision Fund II for any amounts recovered in respect of the Katerra Programme. Furthermore, on 30 December 2020 Greensill Ltd purported to extinguish the US$440 million owed by Katerra under the RPA, by executing a CEA, which had the effect of rendering

Freshfields Bruckhaus Deringer

worthless the security in respect of the Notes. These transactions were conducted without the consent of the Note Trustee, the Noteholders, or the Fund or any of its representatives.

10. The fact that SoftBank Entities drove the restructuring and refinancing is clear from the Debtor's Objection and, in particular, from the facts that:

   10.1    Mr Masayoshi Son himself discussed the proposed restructuring with Lex Greensill at the beginning of October 2020. Greensill thereafter cooperated with Katerra and SoftBank Entities to achieve a restructuring transaction that benefited SoftBank Entities.

   10.2    The November Omnibus Deed purported to oblige Greensill to account to the Vision Fund II for any amounts recovered in respect of the Katerra Programme.

   10.3    On 30 December 2020 Greensill Ltd entered into a Transfer Agreement pursuant to which it transferred, for no consideration, the Katerra shares received by Greensill Ltd in the Katerra recapitalisation and refinancing transaction to SVF II Abode (Cayman) Limited, a SoftBank Entity.

***The Fund is the ultimate victim***

11. The ultimate victim of these matters is the Fund, which has acquired Notes which have defaulted and in respect of which it has made no recoveries.

12. It is clear from the above background that the Fund (and/or its representatives) have claims against SoftBank Entities for the loss suffered as a result of the default of the Notes. Further details of these claims are set out set out at para 95 below.

**Background**

**Freshfields Bruckhaus Deringer**

13. Capitalised terms herein refer to those terms as defined in the relevant documents.

*The RPA*

14. Greensill Limited ("**Greensill Ltd**", and, together with its affiliates, "**Greensill**") entered into a Receivables Purchase Agreement with Katerra Inc (Delaware) ("**Katerra Delaware**") and other Sellers dated 9 December 2019 (the "**RPA**"). The RPA provided a framework for the Sellers to sell Receivables to Greensill Ltd. The definition of Receivables included expected future amounts intended to become payable as a result of anticipated future sales of goods or services ("**Future Receivables**"). One of the conditions for a purchase was that the aggregate amount outstanding as a result in respect of Future Receivables would not exceed US$150 million.

15. The Proposed Receivables to be sold on any applicable Purchase Date were to be identified in the schedule exhibited to a Request substantially in the form in Schedule 1 to the RPA. That exhibit would list the Account Debtor and the currency, amount and due date of each Receivable to be sold. If the conditions precedent in section 1(b) of the RPA were satisfied, Greensill Ltd was to purchase the Proposed Receivables and to pay the applicable Purchase Price on the Purchase Date.

16. On each occasion on which Receivables were sold to Greensill Ltd, the Purchase Price is understood to have been paid by Greensill Capital (UK) Ltd ("**GCUK**") on its behalf. GCUK would have been in funds to do so from the proceeds of the note(s) securitised by interests arising in connection with those Receivables, which were acquired as explained below.

17. With each purchase, Greensill Ltd became the owner of the Seller's right, title and interest in the Purchased Receivable and all Related Security, Collections and proceeds (as defined in the RPA).

18. If an Event of Repurchase occurred under clause 5 of the RPA, which included a Dispute arising in respect of a Purchased Receivable, a Purchase Receivable not being

**Freshfields Bruckhaus Deringer**

paid by the Expected Payment Date, or a Future Receivable not becoming a fully due and payable payment obligation within 180 days of purchase, Greensill Ltd could require the Seller to repurchase the affected Purchased Receivable.

19. While sales of Receivables were proceeding in accordance with the RPA, any amounts falling due in respect of Purchased Receivables were collected and credited to Greensill Ltd, and it was also possible for the amount falling due on an Event of Repurchase to be set-off against the Purchase Price of further Proposed Receivables pursuant to clause 5(f) of the RPA. The Repurchase Price would be the amount paid plus interest from the Expected Payment Date to the date of full payment (at the Discount Rate, defined as LIBOR + 6%).

20. Accordingly, on each Purchase Date, Greensill Ltd acquired from the Seller identified in the Request, title in the listed Receivables which should have resulted in a payment from the Account Debtor on the applicable Due Date or a payment from the Seller following an Event of Repurchase.

21. At the same time as the RPA was entered into, Katerra Cayman entered into a Parent Guarantee with Greensill Ltd. In addition, other liens and security interests were granted over certain assets of the Sellers pursuant to the RPA, and other agreements.

22. At the time when the RPA was entered into, SoftBank Entities were investors in both Katerra and Greensill:

(1) SoftBank Vision Fund I ("**SVF**") had (in 2018 and 2019) contributed approximately US$1.4 billion of financing to Katerra and had become its largest capital investor, and, in 2019, SVF provided Katerra with an additional US$200 million in exchange for a promissory note and another US$150 million in exchange for an ownership stake in Katerra Middle East.[4]

---

[4] See the declaration of Matthew Niemann dated 7 June 2021 filed in the Bankruptcy Proceedings (as defined below) ("**Niemann**") at [19] and [22], and the declaration of Marc Liebman, Chief Transformation Officer of Katerra Cayman, dated 7 June 2021 filed in the Bankruptcy Proceedings ("**Liebman**") at [53] and [60].

**Freshfields Bruckhaus Deringer**

(2) SVF and/or its affiliates were also heavily invested in Greensill in 2019, having invested approximately US$1.455 billion that year. Niemann [20] states that "*SVF and/or its affiliates owned approximately 40% of Greensill at the time of the 2020 recapitalization transaction described herein*".

23. A Fee Letter dated 9 December 2019 was also entered into connection with the RPA between, in particular, Katerra Delaware, the other Sellers and Greensill Ltd (the "**Fee Letter**"). This provided, in particular, that "*it shall be a further condition to Buyer's commitment to fund any Request that credit support provided by SoftBank Group Corp. or an affiliated entity ("**Softbank**") on or about the date hereof in the form of a credit default swap or guarantee, and/or any other credit support provided by Softbank, has been honoured and/or is and remains in place in full force and effect in form and substance satisfactory to Buyer (or an affiliate of Buyer) and Softbank*". SBG (including close and direct involvement from Mr Masayoshi Son personally) and the Vision Fund specifically discussed the Katerra financing and this credit support with Greensill in December 2019. On 19 December 2019, Lex Greensill sent an email with the subject line 'Katerra – Variation' to certain Greensill staff regarding SoftBank's approval of a guarantee which formed part of the underlying Katerra programme. The email includes: "*Masa was personally sighted on the issue and gave me his personal commitment that the guarantee will be issued...(I have now done so and Masa was explicit about his support.)*"

24. Further, "*At virtually all times from March 2020 through December 2020, the aggregate amount outstanding under the RPA was about $440 million*".[5]

25. We also now understand that by early 2020, the Sellers had defaulted on the covenants in the RPA and that on 30 March 2020, 1 June 2020 and 12 November 2020, Standstill and Forbearance Letters were entered into with Greensill Ltd.[6] The Fund was not informed of Katerra's precarious financial situation.

---

[5] Greensill Chapter 11 Claim, as defined below.

[6] Debtors' Objection (as defined below) at [12].

## Freshfields Bruckhaus Deringer

### *The Participation Agreement and Security Agreement*

26. Greensill Ltd entered into a Participation Agreement with GCUK dated 19 December 2019 (the "**Participation Agreement**"), under which Greensill Ltd offered and GCUK as Participant accepted Participations in the Payment Obligations acquired by Greensill Ltd under the RPA. A Participation constituted a contractual right to be paid an amount equal to all amounts received by Greensill Ltd in respect of the individual Participated Payment Obligation and any Related Rights relating thereto.

27. In return, it is understood that GCUK (as agent for Greensill Ltd) paid the Seller for the Receivables under the RPA. It funded those purchases by selling its rights to receive money from Greensill Ltd on to Hoffman, which in turn funded them by selling notes securitised upon those rights. GCUK was also Greensill Ltd's agent for the receipt and processing of the offer files generating a Payment Obligation, and performed the operational duties of Greensill Ltd.

28. Greensill Ltd granted GCUK security for its obligations under the Participation Agreement, in the form of a Security Agreement containing fixed and floating charges over its assets (including a first fixed charge over all its present and future rights under and in connection with all Payment Obligations acquired under the Relevant Receivables Purchase Agreement and all of its present and future rights under the Transaction Documents), also dated 19 December 2019 (the "**Security Agreement**").

### *The Notes*

29. Greensill refinanced loans it granted and receivables it purchased, including by issuing asset-backed notes through SPVs.

30. In particular, there were a number of receivables programmes established by GCUK with Hoffman to act as the Issuer of Notes under an 'up to USD 20,000,000,000 Secured Note Programme backed by Relevant Claims' known as the Lagoon Farm Programme.

Freshfields Bruckhaus Deringer

31. Hoffman is organised to have compartments which form a separate and distinct part of Hoffman's estate and have legal capacity as a matter of Luxembourg law. For each designated set of Sellers, there was a separate compartment and a separate series of notes. In the case of the RPA, the relevant Hoffman compartment is 'MZ' and the Note Programme was known as the Fairymead Programme.

32. GCUK entered into a Master Assignment Agreement with Hoffman as (Initial) Purchaser and Citibank N.A., London Branch ("**Citi**") as Note Trustee, dated 21 December 2017 (the "**MAA**").

33. The MAA operates as an umbrella agreement setting out the terms on which GCUK could sell and assign its right, title and interest in a Payment Obligation, and all of GCUK's Additional Rights relating to that Payment Obligation, to Hoffman. The actual sales and purchases were effected between GCUK and a specific Hoffman compartment, with clause 1.5 of the MAA providing that the provisions of the MAA apply *mutatis mutandis* as a separate and independent agreement between GCUK, Hoffman acting through that compartment, and the Note Trustee.

34. To effect the sale of a Payment Obligation and the related Additional Rights, GCUK was required to deliver an Offer File containing the information specified in the definition in clause 1.2 of the MAA and in the form at Schedule 2 of the MAA.

35. The Hoffman compartment could accept the offer in an Offer File following the procedure in clause 2.3 of the MAA by returning it to GCUK attached to a password protected email from an Authorised User, marked 'accepted'. If it did so, subject to certain conditions, it became obliged to pay GCUK the Purchase Price.

36. Each set of Payment Obligations and Additional Rights acquired by Hoffman from GCUK was used to secure a note or notes. In the case of the Fairymead Programme, the notes were distributed by Greensill Capital Securities Limited, a subsidiary of GCUK. They were issued in the form of a Regulation S Global Note and registered in the name of the nominee for the common depository for Euroclear and Clearstream,

### Freshfields Bruckhaus Deringer

Luxembourg. We understand that the only notes issued by Hoffman compartment MZ under the Fairymead Programme (the "**Fairymead Notes**") relate to the Receivables acquired by Greensill Ltd under the RPA in respect of which GCUK acquired Participations under the Participation Agreement.

37. The purchasers of interests in the Fairymead Notes over the life of the Fairymead Programme were the Fund and the Credit Suisse Nova (Lux) Supply Chain Finance High Income Fund. However, in the relevant period for the outstanding Notes which have defaulted, the only purchaser was the Fund. As a result, interests in all the outstanding Notes are held in the clearing systems on behalf of the Fund by Credit Suisse (Luxembourg) SA, which acts as the Credit Suisse custodian (the "**CS Custodian**").

38. Citi is the Note Trustee which holds security for the obligations of Hoffman in respect of Notes issued under the Lagoon Farm Programme, including the Fairymead Notes.

39. Hoffman entered into a Master Trust Deed with Citi originally dated 13 October 2017 and supplemented by a Supplemental Trust Deed dated 21 December 2017 and by a Second Supplemental Trust Deed B dated 18 December 2019 (the "**MTD**"). The MTD sets out the terms on which Hoffman as Issuer of Notes will create security for its payment and other obligations under a particular tranche of notes by executing and delivering a Supplemental Trust Deed in respect of that tranche. It also contains at Schedule 3 the General Conditions of the Notes.

40. The terms of the Fairymead Notes to be issued by Hoffman were described in a 'Series Supplement Number 1' dated 18 December 2019, which incorporated a 'Product Annex' and a 'Cash Collection and Allocation Annex'.

41. Each time Hoffman acquired interests in relevant Payment Obligations and Additional Rights from GCUK and issued a related Note, it executed and delivered a Pricing Supplement identifying the Aggregate Principal Amount of the Note with its Maturity Date, and the Relevant Claims which were listed in an enclosed Relevant Claim Report, and which had a Maturity Date purportedly corresponding to the Maturity Date

**Freshfields Bruckhaus Deringer**

in respect of the notes. The Relevant Claims are understood to be the relevant Receivables sold to Greensill Ltd by a Seller under the RPA, in respect of which Greensill had granted a Participation to GCUK, and GCUK had assigned its interests to Hoffman.

42. Para 5 of Part B of each Pricing Supplement constitutes the Supplemental Trust Deed for the tranche of Notes referred to above at para 39. Part B, para 5(3) creates the security contemplated by the MTD.

43. Part B para 5(3) of each Pricing Supplement effects, among other things, a 'first ranking' assignment to Citi as Note Trustee of all Hoffman's right, title and interest, present and future, in and under the Relevant Claims identified in the Pricing Supplement and the Additional Rights relating thereto. This is assigned as continuing security for the payment of all amounts which Hoffman is liable to pay in relation to all the Notes comprising the Series of which the Tranche forms a part.

44. The cumulative effect of the series of assignments from GCUK to Hoffman and Hoffman to Citi is that Citi:

  44.1    Is the assignee of all rights which have been created as between Greensill Ltd and GCUK under the Participation Agreement, and is to be regarded as the Participation Holder for the purposes of that Agreement.[7]

  44.2    Will contingently and immediately become the beneficial owner of any future rights under the Participation Agreement, as and when they come into existence.

45. Citi holds those rights and incipient contractual rights which equity will enforce as security for Hoffman's obligations to pay the holders of the Fairymead Notes.

---

[7] "Participation Holder" is defined in the Participation Agreement as "*any holder of a Participation, being Participant initially, or any person to whom Participant or any other Participation Holder transfers or assigns such Participation*".

**Freshfields Bruckhaus Deringer**

***Investment by SoftBank Entities in the Fund***

46. By the end of 2019 (when, as noted above, SoftBank Entities had invested heavily in Greensill), the supply-chain finance funds (the "**SCF Funds**") managed by Credit Suisse Asset Management ("**CSAM**") had over US$1.2 billion exposure to Vision Fund portfolio companies (including, in particular, Oyo Hospitality, View Inc, Guazi Ltd Holdings, and Fair Financial Holdings), through notes presented to the SCF Funds by Greensill.

47. On or about 23 March 2020,[8] SBG[9] subscribed for shares in the Fund, investing an amount of some US$1.5 billion. We understand from the November Omnibus Deed[10] that GCUK entered into a letter of undertaking with SBG in connection with this investment.

48. By virtue of its investment in the Fund, SoftBank Entities were aware of the nature of the Fund's investments, including the Fairymead Notes, and that the notes were securitised on receivables:

    48.1    The Offering Memorandum dated 1 July 2019 in respect of the Fund records that the Fund will be investing in *"zero coupon global notes issued at a discount by a special purpose vehicle"* that are *"backed by buyer-confirmed trade receivables/buyer payment undertakings, supplier payment undertakings and account receivables"*, and that *"The Receivables are syndicated into the Notes…."*.

    48.2    On 23 March 2020, Akira Takahashi of CSAM sent to Seiichi Morooka of SoftBank a presentation of the Fund which explained the business model of the Fund, that Katerra was at such time the fifth biggest obligor in which

---

[8] See Recital A to the Omnibus Deed.

[9] See Recital A to the Omnibus Deed.

[10] As defined below.

the Fund had invested and that 3% of the Fund's assets were invested in Katerra notes.

49. Moreover, as noted above, SoftBank Entities were involved in the RPA from the outset, and were also investors in both Katerra and Greensill. Through these investments, SoftBank Entities knew of the Greensill financing model.

50. Credit Suisse Virtuoso SICAV-SIF (defined as the "**Company**") acting on behalf of the Fund (defined as the "**Subfund**"), Credit Suisse Fund Management S.A (defined as the "**AIFM**"), and SBG (defined as the "**Investor**") entered into a Side Letter Agreement dated 23 April 2020 in connection with SBG's investment in the Fund (the "**SBG Side Letter**"). This provided, *inter alia*, that the Subfund had not acquired any supply chain finance outside the GCUK program and had limited its investment in target funds to the Authorised Target Funds, and would not acquire any supply chain finance asset outside the GCUK programme or invest in any other collective investment scheme other than the Authorised Target Funds at any time while the Investor had any investment in the Subfund.

51. The Side Letter was terminated in July 2020, and SBG exited its investment in the Fund around 15 July 2020.

*The Katerra restructuring and refinancing*

52. Unbeknown to the Fund and its representatives, between September and December 2020, SoftBank Entities facilitated and drove the restructuring and refinancing of Katerra which violated the Note Trustee's rights in respect of the Notes and has caused loss to the Fund, as explained below.

**Freshfields Bruckhaus Deringer**

53. As mentioned above, by early 2020, the Sellers had defaulted on the covenants in the RPA and on 30 March 2020, 1 June 2020 and 12 November 2020, Standstill and Forbearance Letters were entered into with Greensill Ltd in connection therewith.[11]

54. In May 2020, Katerra commenced a Series F round of financing, and SVF (through SVF Abode (Cayman) Ltd ("**SVF Abode**")) provided Katerra with an initial US$100 million of funding and agreed to fund another US$100 million approximately 45 days later. Further, SVF exchanged its 49% ownership stake in Katerra Middle East for another US$150 million in Series F shares.[12]

55. Also in May 2020, Katerra identified potential improper revenue recognition practices and an independent committee of Katerra Cayman's Board was formed to investigate. As a result of the investigation, SVF Abode exercised its contractual right to withhold the additional US$100 million of financing on the 45-day timeline.[13]

56. In August 2020, Katerra engaged Kirkland & Ellis as restructuring counsel, and SVF provided the additional US$100 million in connection with the Series F Financing that it had previously elected not to provide.[14]

57. Niemann [23] provides that:

"*In September 2020, Houlihan Lokey was engaged to render investment banking services to Katerra in connection with Katerra's liability management initiatives and exploration of strategic alternatives....Katerra, with the assistance of Houlihan Lokey, approached several parties, including existing counterparties of Katerra and other interested parties to explore financing and other strategic transactions. Houlihan Lokey actively pursued negotiations with SVF and a consortium of new investors and existing stakeholders (the "**Consortium**") who expressed a desire to support Katerra's business. The proposed transaction contemplated a new-money investment by the Consortium and SVF of approximately $380 million in exchange for a 90% ownership stake in Katerra....In addition, the transaction contemplated the retirement of Katerra's outstanding Greensill Receivables Facility and the sale of Katerra's ownership interests in certain foreign ventures. Katerra, SVF and the Consortium*

---

[11] Debtors' Objection (as defined below) at [12].

[12] Niemann [22]; Liebman [6] and [60].

[13] Liebman [7] and [61].

[14] Liebman [65].

**Freshfields Bruckhaus Deringer**

*executed a non-binding letter of intent reflecting this transaction. The transaction, however, did not materialize".*

58. This evidence makes clear that in September 2020, the involved parties including SVF and Katerra were contemplating a "*retirement*" of the RPA.[15] This is despite the fact that SoftBank Entities were or should have been aware that the RPA was the basis for the rights under the Participation Agreement which constituted the security in respect of the Fairymead Notes.

59. An email chain of 8 October 2020 shows Katerra's advisors arranging a meeting with SB Investment Adviser's ("**SBIA's**") Jeffrey Housenbold and Justin Wilson, attaching a business plan which involved, among other things, "*Greensill-purchased A/R*" being "*returned to Katerra U.S.*", and "*[a]ll A/R previously purchased by Greensill will be given back to Katerra US to collect and utilize the proceeds of*".

60. SBIA's Jeffrey Housenbold and Justin Wilson were Katerra Cayman Board members at this time and at least as of 23 December 2020 and SBIA's Hatim Sukhla (Director, Americas) was also present at Katerra Board meetings concerning the 2020 restructuring and refinancing. SoftBank Entities were accordingly represented on Katerra Cayman's Board.

61. The RPA and "*related conversation with Greensill*" were discussed at a 12 November 2020 Katerra Cayman Board meeting.

62. On 10 November 2020, Greensill Capital Pty Ltd ("**Greensill Parent**"), GCUK, SBG (defined as "**SoftBank**"), SVF II Holdings (Singapore) Pte Ltd (defined as "**Vision Fund II**") and another entered into an Omnibus Deed (the "**November Omnibus Deed**"), as to which:

---

[15] See also the Debtors' Objection (as defined below) at [14] which provides: "*In August and September 2020, Katerra engaged outside legal, financial and restructuring advisors. The company also added independent directors to begin exploring in-court and out-of-court restructuring options to, among other things, address Katerra's obligations under the Receivables Arrangement*".

Freshfields Bruckhaus Deringer

62.1    Recital A specifically records SBG's investment in the Fund.

62.2    Recital C provides: "*As part of the consideration provided by [Greensill Parent] in respect of the SVF II Loan Note, [Greensill Parent] will assume any and all losses in respect of the Katerra Notes and the Katerra Programme*". The "*Katerra Notes*" are defined as "*the notes issued by Hoffman S.à.r.l., compartment MZ (which are **backed by payment obligations originated under the Katerra Programme**)*". The "*Katerra Programme*" is defined as "*the receivables financing programme provided by Greensill Limited as buyer and amongst others, Katerra Inc as a seller under a receivables purchase agreement dated 9 December 2019 (as amended, restated and or updated from time to time)*". It is clear from these definitions that SBG was aware of the Fairymead Notes and of the payment obligations backing them.

62.3    Recital D provides: "*In connection with [Greensill Parent] assuming any and all losses in respect of the Katerra Notes and the Katerra Programme, [SBG] agreed to conditionally waive [redacted]... and [redacted] agreed to enter into a sale and purchase deed with SoftBank on or around the date of this Deed ...with respect to the sale and purchase of certain shares in [Greensill Parent]*".

62.4    Under clause 2.1, Greensill Parent and GCUK waived and released SBG, Vision Fund II, SVF Wyatt (Singapore) Ltd and SB Investment Advisers (UK) Ltd and their Related Parties from claims arising under, in connection with or relating to the Katerra Programme and the Katerra Notes.

62.5    Clause 3 obliged Greensill Parent and GCUK to, and to procure each other Greensill Group Company to:

"*(a) account to the Vision Fund II or any subsidiary, affiliate or third party nominated by the Vision Fund II for any amounts recovered in respect of the Katerra Notes and/or Katerra Programme and promptly following receipt*

**Freshfields Bruckhaus Deringer**

*remit such amounts in immediately available funds to the Vision Fund II (or to such person nominated by Vision Fund II);*

*(b) use its best endeavours to recover any amounts to which it or any Greensill Group Company is entitled to under the Katerra Notes and/or Katerra Programme;*

*(c) recover under the Katerra Notes and/or Katerra Programme at least US$176,000,000 in the aggregate by 31 December 2020 and remit such aggregate amount to Vision Fund II (or to such person nominated by Vision Fund II) in immediately available funds by no later than 31 December 2020.....”*

62.6    This provision was agreed, requiring Greensill Parent and GCUK to account to the Vision Fund II (or its nominee) for amounts recovered in respect of the Katerra Programme, and to recover under the Katerra Notes and/or Katerra Programme at least US$176 million in the aggregate by 31 December 2020 and remit such amounts to Vision Fund II (or its nominee), notwithstanding the fact that – as is clear from the definition of the "Katerra Notes" in the November Omnibus Deed – the parties were aware that the payment obligations originated under the Katerra Programme were backing the Katerra Notes. Moreover, Greensill Parent and GCUK were under this provision obliged to recover under the Katerra Notes (and/or Katerra Programme) at least US$176 million by 31 December 2020 notwithstanding that the parties, through the restructuring and refinancing discussions referred to above, were contemplating cancelling the RPA, which was the basis for the rights under the Participation Agreement which constituted the security in respect of the Katerra Notes.

63.  By an instrument constituting US$440 million of unsecured convertible loan notes of Greensill Parent dated 10 November 2020, SVF II Wyatt Subco (Singapore) Pte Ltd subscribed for US$440 million of unsecured convertible loan notes with a right to acquire stock in Greensill Parent (the "Convertible Note"). Such conversion right held substantial value as the conversion price was equal to the price paid by investors in the preceding private placement of Greensill shares.

⦿ **Freshfields Bruckhaus Deringer**

64. The principal amount of the Convertible Note was paid to an account of GCUK with Citibank NA London on 10 November 2020. This amount was not, however, set aside or used for repayment of Fairymead Notes but was instead used by Greensill for other purposes.

65. Niemann [24] provides that in late November 2020, SVF Abode indicated an interest in investing an additional US$200 million to ensure Katerra would be able to meet its ongoing obligations, and that Katerra issued a promissory note to SVF Abode in exchange for a US$25 million bridge loan whilst Katerra engaged with SVF Abode and other stakeholders to negotiate the terms of a restructuring and recapitalisation of Katerra.

66. Liebman [11] provides:

"*in late November 2020, Katerra reached a non-binding term sheet with the only investor willing to engage in an out-of-court restructuring, SVF Abode, and other key stakeholders, agreeing to a series of transactions that resulted in the financial recapitalization and restructuring of Katerra's material obligations, whereby, among other things:*

- *SVF Abode agreed to invest $200 million in new money in exchange for approximately 75% of Katerra's post-closing equity;*
- *Certain of Katerra's contract counterparties agreed to global amendments to their project contracts to amend and extend project timelines and completion dates in exchange for granting releases of certain claims regarding active projects;*
- *Greensill Ltd…extinguished approximately $440 million owed by Katerra under the [RPA] in exchange for approximately 5% of the post-equity closing in Katerra, which equity was immediately transferred by Greensill to an affiliate of SoftBank Vision Fund II ("SVF II") in connection with a transaction in which SVF II invested $440 million in the parent company of Greensill; and*
- *5% of the post-closing equity was reserved for certain existing equity holders and 15% of the post-closing equity was reserved in a share pool for an equity incentive plan and related grants*".

67. This shows that SVF Abode was involved in discussions concerning the proposed extinguishment of the US$440 million owed by Katerra under the RPA, in exchange for 5% of the shares of Katerra which were to be immediately transferred by Greensill to an affiliate of SoftBank Vision Fund II ("**SVF II**").

**Freshfields Bruckhaus Deringer**

68. A Security Consent dated 1 December 2020 between Greensill Ltd and the Sellers purported to include a release by Greensill Ltd of "*all liens on all assets of the Sellers created or existing under the [RPA] or any related documents or instruments (other than liens on the Purchased Receivables, including as described in those certain UCC-1 filings made in connection with the perfection thereto)*". Further, Greensill Ltd purported to consent to the transactions consummated pursuant to a Convertible Promissory Note dated as of 30 November 2020 issued in favour of SVF Abode (Cayman) Limited and all Note Documents, including the incurrence of indebtedness thereunder, and the granting of liens on substantially all assets of the Sellers (other than the Purchased Receivables).

69. The November Omnibus Deed was amended by an amendment deed dated 23 December 2020 (the "**December Omnibus Deed**"). Clause 3 of this agreement provided: "*To the extent a Greensill Group Company, after 10 November 2020: (i) recovers any amounts to which it or any other Greensill Group Company is entitled under the Katerra Programme from any party other than SoftBank Vision Fund LP, Vision Fund II or SoftBank; or (ii) receives as consideration any equity interest or instruments convertible into an equity interest in Katerra Inc., Greensill and Greensill UK shall procure that such Greensill Group Company promptly remits any such amounts, equity interest or instruments convertible into an equity interest to Vision Fund II*".

70. Again, this provision was agreed notwithstanding the fact that – as is clear from the definition of the "Katerra Notes" in the Omnibus Deeds – the parties were aware that the payment obligations originated under the Katerra Programme were backing the Katerra Notes.

71. Niemann [25] records that the Katerra recapitalisation transaction was consummated at the end of December 2020 on the following terms (*inter alia*):

**Freshfields Bruckhaus Deringer**

- *"SVF Abode exercised its warrant to purchase ordinary shares of the Company and converted $300 million of promissory notes of the Company held by SVF Abode to equity;*
- *the Company (i) converted all existing preferred share into ordinary shares of the Company, and (ii) issued a new class of preferred shares (the Series A preferred shares) to SVF Abode in exchange for $175 million in cash and extinguishment of a $25 million bridge loan owed to SVF Abode;*
- ***Greensill extinguished approximately $440 million owed by Katerra under the Greensill Receivables Facility in exchange for approximately 5% of the post-equity closing in Katerra, which equity was immediately transferred by Greensill to an affiliate of SoftBank Vision Fund II ("SVF II") in connection with a transaction in which SVF II invested $440 million in the parent company of Greensill"***.

72. On 23 December 2020, the Katerra Cayman Board expressly approved resolutions that, among other things, approved the "*contribution and exchange of Greensill indebtedness"*.

73. The purported extinguishment by Greensill Ltd of the US$440 million owed by Katerra under the RPA was documented in the Contribution and Exchange Agreement dated 30 December 2020 (the "**CEA**") between Greensill Ltd, Katerra Cayman and Katerra Delaware, which was entered into just 8 days after the Fund acquired interests in the greater part of the Notes (and whilst all those Notes were outstanding), as explained below.

74. The present effect of the CEA is understood to be that Greensill Ltd purported to give up all claims *"derived from, based upon, or secured by"* the RPA, the related Parent Guarantee and other Transaction Documents, to cancel the "*Facility Obligations"* and all other monetary obligations under the RPA and other Greensill Finance Documents, to release all other obligations of Katerra Delaware and the Sellers under the Greensill Finance Documents, and to cancel and terminate each of the Greensill Finance Documents. In return, Greensill Ltd received 5% of the equity capital in Katerra Cayman, which was simultaneously assigned for no consideration to SVF II Abode (Cayman) Limited pursuant to a Transfer Agreement also dated 30 December 2020 (the "**Transfer Agreement**").

**Freshfields Bruckhaus Deringer**

75. Under clause 7 of the CEA, on receipt by Greensill Ltd of the Consideration, the Security was to be automatically released and discharged. Further, under clause 8, Greensill Ltd purported to release and discharge Katerra Cayman and Katerra Delaware from the Greensill Claims.

76. The CEA appears to have incapacitated Greensill Ltd from being able to grant Participations under the Participation Agreement, and to have removed the substrate from that Agreement, unless and until the CEA is reversed or set aside by a court of competent jurisdiction.

77. The combined effect of the above steps (assuming their validity) was to allow SoftBank Entities to acquire over 99% of Katerra Cayman's equity whilst ensuring it was debt-free (including as regards the US$440 million owed to Greensill Ltd under the RPA):

  77.1  Niemann [26] provides: "*Through the 2020 recapitalization, all of the Company's funded debt obligations and existing preferred equity were extinguished*".

  77.2  As of the Petition Date, Katerra Cayman's equity was primarily held by the following entities:[16]

| Stakeholder | Series A Preferred | Ownership Percentage |
|---|---|---|
| SVF Abode (Cayman) Limited | 11,420,798 | 93.65% |
| SVF II Abode (Cayman) Limited | 762,144 | 6.25% |
| SVF Habitat (Cayman) Limited | 7,775 | 0.06% |

78. It is apparent from the above that SBG and other SoftBank Entities drove Katerra's refinancing and restructuring in 2020, including the purported extinguishment of the RPA. This is further clear from the Debtors' Objection,[17] which provides:

---

[16] Niemann [27].

[17] As defined below.

**Freshfields Bruckhaus Deringer**

78.1   At [2] that "*In late 2020, [Katerra Cayman], [SBG] ("SBG," together with its affiliates, the "SoftBank Entities"), and [Greensill Ltd] (and their affiliates) negotiated and out-of-court restructuring allowing Katerra to avoid an immediate shutdown and the Greensill Entities to avoid a near-total loss on the $440 million balance on the [RPA]....**The SoftBank Entities, as investors in both the Greensill Entities and Katerra Cayman, were well-positioned to, and did, facilitate a comprehensive resolution*".

78.2   At [15] that SBG negotiated directly with the Greensill Entities and that, through the Omnibus Deeds, "*the SoftBank Entities obtained the Greensill Entities' economic interest in the Receivables Arrangement, thereby allowing the SoftBank Entities to facilitate a comprehensive reorganization of Katerra's capital structure on December 30, 2020*".

78.3   At [20] that "*On December 30, 2020, Katerra executed an out-of-court capital-raise transaction **led by SBG***".

79. In addition:

79.1   The CEO of Katerra in a message to employees on 30 December 2020 stated:

*"Katerra's board determined that our best pass toward resetting and refocusing the company was to recapitalize the business, thereby strengthening Katerra's balance sheet by eliminating substantial debt and providing new capital funding. This recapitalization **is supported by SoftBank**…"*

79.2   The Wall Street Journal reported on 30 December 2020 that:

*"As part of the funding package, **SoftBank backed financial services firm Greensill Capital** agreed to cancel around $ 435 m in debt owed by Katerra in exchange of roughly 5% stake in the company".*

***The Defaulted Fairymead Notes***

**Freshfields Bruckhaus Deringer**

80. Enclosure 1 annexed to this letter lists 83 notes issued by Hoffman Compartment MZ under the Fairymead Programme showing their ISIN number, date of Issue, date of Maturity and Principal Amount. These Notes were issued between 15 September 2020 and 22 December 2020, with 68 of them issued on the later date. In the majority of cases, they fell due on 15 March 2021; there are 8 Notes which fell due on 17 May 2021. All of those Notes have now fallen due. All have defaulted. The aggregate Principal value of those notes is US$439,999,710.

81. In relation to the Relevant Claims backing the Notes, requests continued to be made of Greensill Ltd by Katerra Delaware, and accepted by Greensill Ltd, between 13 September and 10 December 2020. Further, on 18 December 2020, Katerra Delaware and Greensill Ltd entered into side letters which restated the Buffer Period in respect of certain Purchased Receivables, the Advance Amounts of which were US$224,061,896.01 and US$139,191,080.01 respectively.

82. In summary, therefore, as of 22 December 2020:

82.1    Hoffman had issued and the Fund had acquired notes with an aggregate Principal value of US$439,999,71, purportedly backed by Relevant Claims.

82.2    Interests in the Participations in respect of the Receivables acquired by Greensill Ltd pursuant to the RPA had been assigned by GCUK to Hoffman pursuant to the MAA and by Hoffman to Citi by a series of separate assignments effected by the Pricing Supplement relating to each specific Note.

83. Given in particular their knowledge of and involvement in the RPA from the outset, their central role in the Katerra restructuring, their investments in Katerra and Greensill, the presence of SBIA representatives on the Katerra Cayman Board, their former investment in the Fund, and the terms of the Omnibus Deeds, SoftBank Entities

**Freshfields Bruckhaus Deringer**

knew or ought to have known that the Fund was acquiring Notes purportedly backed by Relevant Claims, notwithstanding that they also knew that, at the same time, it was planned to, effectively, extinguish the RPA and Greensill Ltd's claims against Katerra which were the basis for the security backing the Notes.

84. No consent was sought from (or prior information was provided to) Citi (as Note Trustee), the Fund, the CS Custodian, CSAM, or any other representative of the Fund, in relation to the entry into the CEA and the related transactions in connection with Katerra's restructuring and refinancing, notwithstanding that they should not have been entered into without Citi's consent. In particular, the chain of assignments constitutes Citi a "*Participation Holder*" for the purposes of the Participation Agreement whose prior written consent was required under clause 8.1(C) of the Participation Agreement for "*amendment, modification, waiver, variation or novation of, or with respect to*" of the Transaction Documents including the RPA (which was the effect of the CEA, in particular). Entry into the CEA was, therefore, a breach of clause 8.1(C) by Greensill Ltd.

85. In the circumstances, SoftBank Entities knew or ought to have known that the effect of the CEA and the related transactions in connection with Katerra's restructuring and refinancing would be to violate the rights of the Note Trustee in respect of the Notes and to inevitably cause loss to the Fund (which holds the underlying economic interest in the Notes) by effectively rendering worthless the security underlying them without any compensation.

86. The ultimate victim of the CEA is the Fund, which has acquired Notes which have defaulted and in respect of which it has made no recoveries.

### *Greensill insolvencies*

87. In early March 2021, Greensill collapsed and entered into insolvency proceedings in the UK, Australia and US.

88. It was only after GCUK filed for administration that the Fund discovered that Greensill Ltd had purported to waive its claims against Katerra through the transactions described above.

### The Bankruptcy Proceedings and the Greensill Chapter 11 Claim

89. Liebman [14] provides that *"After providing Katerra with over $2 billion in equity funding to support ongoing operations and the direct repayment to Greensill of $440 million to facilitate the 2020 recapitalization, SoftBank Vision Fund I ("**SVF**") explained to Katerra that it could not responsibly continue to support Katerra with go-forward equity in May 2021"*.

90. Katerra Delaware, along with 32 affiliates including Katerra Cayman (collectively, the "**Debtors**"), filed for Chapter 11 protection in the Bankruptcy Court for the Southern District of Texas on 6 June 2021 (the "**Petition Date**") (the "**Bankruptcy Proceedings**"). Liebman was filed by the Debtors in support of the Chapter 11 petitions and first day motions.

91. SB Investment Advisers (UK) Ltd (an affiliate of SVF) provided US$35 million of post-petition financing to Katerra Delaware. Liebman [81] provides that *"Given its position as equity holder in Katerra, its familiarity with Katerra's business and assets, and Katerra's impending liquidity shortfall, SB Investment Advisers (UK) Limited was best positioned to provide the DIP Promissory note to facilitate Katerra's soft landing into chapter 11"*.

92. In early August 2021, Greensill Ltd, through its liquidators, filed claims in the Bankruptcy Proceedings against the Debtors (the "**Greensill Chapter 11 Claim**"). The Greensill Chapter 11 Claim explains that the CEA was a transaction at an undervalue, and that the sole director of Greensill Ltd acted in breach of his fiduciary duties in causing, authorising and permitting such transaction and/or failing to prevent it from taking place. The Greensill Chapter 11 Claim records that, subject to lifting the automatic stay in the bankruptcy proceedings, the liquidators may commence

Freshfields Bruckhaus Deringer

proceedings to pursue potential claims and causes of action seeking to rescind, avoid or otherwise unwind the CEA and/or seek damages, including but not limited to pursuit of funds held on constructive trust, transaction at undervalue, transaction defrauding creditors, knowing receipt on the basis of a breach of fiduciary duty, dishonest assistance, conspiracy to commit fraud and aiding and abetting, and breach of contract.

93. On 31 August 2021, the Debtors in the Bankruptcy Proceedings filed an objection to Greensill Ltd's proof of claim (the "**Debtors' Objection**").

**Claims and questions arising**

94. You will no doubt appreciate that we are continuing to investigate and review these matters, including all potential claims the Fund may have against one or more of the SoftBank Entities and/or relevant individuals. We are reviewing these matters from such sources of information as are presently available to us, but we do not yet have all of the information or background that will be known to the SoftBank Entities.

95. Nonetheless, it is clear from the above background that the Fund (and/or its representatives) are likely to have claims against SoftBank Entities for the loss suffered as a result of the default of the Notes, including (without limitation) claims for:

95.1    Conspiracy between, in particular, SoftBank Entities and Greensill, with wrongful conduct including breach of contract, misstatements, inducement of breaches of contract and duty, and breach of directors' duties.

95.2    Inducement of, or aiding and abetting, breaches of contract and duty and/or interference with contract.

95.3    Breach of duties of care owed to the Fund (in particular in light of the parties' close relationship through the SBG investment in the Fund, and the direct and obvious harm that would be caused to the Fund by virtue of the above-referenced transactions).

**Freshfields Bruckhaus Deringer**

95.4     Unjust enrichment.

95.5     Remedies available to the Fund as the victim of the transactions pursuant to section 423 of the Insolvency Act 1986 (or equivalents).

96. CSAM has a duty to take all steps to collect the assets of the Fund, including the obligation to raise and, if necessary, litigate claims against third parties to make the Fund's investors whole.

97. On any basis, a number of points clearly call for an explanation. Please therefore provide forthwith a full explanation of the SoftBank Entities' account of the above matters, including in particular the following:

97.1     The material discrepancy between: (i) the account which Mr Masayoshi Son and senior SoftBank staff gave of their knowledge and involvement in the Katerra programme and subsequent extinguishment of the RPA to Thomas Gottstein and other senior Credit Suisse representatives in a meeting held in September 2021; and (ii) contemporaneous evidence. In the September meeting, Mr Masayoshi Son denied all knowledge of the Katerra programme. However, this account is inconsistent with Lex Greensill's email with the subject line '*Katerra – Variation*' of 19 December 2019 to certain Greensill staff regarding SoftBank's approval of a guarantee which formed part of the underlying Katerra programme, which includes: "*Masa was personally sighted on the issue and gave me his personal commitment that the guarantee will be issued…(I have now done so and Masa was explicit about his support.)*" Further, we also understand, that on 10 October 2020, when the restructuring and refinancing of Katerra was being developed, Lex Greensill discussed these issues with Mr Son and gave a presentation to him. In light of these facts, Mr Son's stance in his meeting with Mr Gottstein is surprising and requires explanation. On the face of it, it is clear that the Katerra programme had

**Freshfields Bruckhaus Deringer**

support and involvement from the most senior levels of management at the SoftBank Entities.

97.2    Precisely when, with whom, and by which SoftBank Entities the proposed extinguishment of the RPA was discussed, and exactly what was discussed.

97.3    The basis upon which SoftBank Entities considered it appropriate to discuss, facilitate and effect the transactions in connection with Katerra's restructuring and refinancing in 2020, including the CEA, without informing or seeking the consent of Citi, or the Fund or any of its other representatives, notwithstanding the obvious adverse impact upon the Fund of the transactions.

97.4    What amounts were remitted to Vision Fund II under clause 3 of the Omnibus Deeds as referred to in 62 and 69.

98. Linked to the above, please provide forthwith:

98.1    Details of the credit support provided by SBG (or any affiliated entity) to Greensill Ltd (or its affiliate) as referred to at para 23 above, with copies of any relevant documents concerning such support.

98.2    The letter of undertaking between GCUK and SBG referred to at para 47 above.

98.3    The non-binding letters of intent referred to in paras 57 and 66 above and copies of those documents.

98.4    The presentation referred to at para 97.1.

**Freshfields Bruckhaus Deringer**

99. We look forward to hearing from you with a full explanation of the points identified above, together with any relevant documents on which the SoftBank Entities rely or which are relevant to the above claims by no later than 5pm CEST on Thursday 21 October.

100.     We reserve the right to bring proceedings against one or more SoftBank Entities without further notice.

Yours sincerely

*Freshfields Bruckhaus Deringer LLP*

Freshfields Bruckhaus Deringer LLP

**Freshfields Bruckhaus Deringer**

## SCHEDULE 1: RELEVANT SOFTBANK ENTITIES

**SoftBank Group Corp**
1-7-1, Kaigan
Minato-Ku
Tokyo, 105-7537

**SoftBank Vision Fund LP**
Aztec Group House
11-15 Seaton Place, St Helier
Jersey, JE4 0QH

**SoftBank Vision Fund II-2 LP**
Crestbridge Limited
47 Esplanade, St Helier
Jersey, JE4 0QH

**SVF Abode (Cayman) Limited**
1 Circle Star Way, 2F
San Carlos, CA 94070

**SVF II Abode (Cayman) Limited**
1 Circle Star Way, 2F
San Carlos, CA 94070

**SVF Habitat (Cayman) Limited**
1 Circle Star Way, 2F
San Carlos, CA 94070

**SB Investment Advisers (UK) Limited**
69 Grosvenor Street
London, W1K 3JP

**SB Investment Advisers (US) Inc.**
1 Circle Star Way, 2F
San Carlos, CA 94070

**SVF II Wyatt Subco (Singapore) Pte. Limited**
138 Market Street, #27-01A
CAPITAGREEN
Singapore, 048946

**SVF II Holdings (Singapore) Pte. Limited**
138 Market Street, #27-01A
CAPITAGREEN
Singapore, 048946



31 | 31

**ENCLOSURE 1: NOTES ISSUED BY HOFFMAN COMPARTMENT MZ UNDER
THE FAIRYMEAD PROGRAMME**

| Portfolio | ISIN | Description | Compartment | Obligor/Program | Issue Date | Maturity | Currency | Principal ($) |
|---|---|---|---|---|---|---|---|---|
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2121952944 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 15/09/2020 | 15/03/2021 | USD | 3,057,450.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2121953249 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 15/09/2020 | 15/03/2021 | USD | 6,851,616.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2121953322 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 15/09/2020 | 15/03/2021 | USD | 4,512,191.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2121953595 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 15/09/2020 | 15/03/2021 | USD | 7,355,640.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2121953678 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 15/09/2020 | 15/03/2021 | USD | 6,829,252.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2121953751 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 15/09/2020 | 15/03/2021 | USD | 3,900,486.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2121954056 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 15/09/2020 | 15/03/2021 | USD | 3,834,000.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | *XS2121958719* | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | *16/11/2020* | 17/05/2021 | USD | 5,608,632.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2121959014 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 16/11/2020 | 17/05/2021 | USD | 4,945,638.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2121959287 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 16/11/2020 | 17/05/2021 | USD | 5,333,460.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2121959790 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 16/11/2020 | 17/05/2021 | USD | 5,525,689.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | *XS2190669882* | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | *16/11/2020* | 17/05/2021 | USD | 4,007,008.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | *XS2190669965* | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | *16/11/2020* | 17/05/2021 | USD | 5,878,800.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2190670203 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 16/11/2020 | 17/05/2021 | USD | 3,762,524.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2190671607 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 16/11/2020 | 17/05/2021 | USD | 5,344,632.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2190674452 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 22/12/2020 | 15/03/2021 | USD | 5,037,633.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2190674619 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 22/12/2020 | 15/03/2021 | USD | 9,405,501.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2190674700 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 22/12/2020 | 15/03/2021 | USD | 7,896,386.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2190674882 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 22/12/2020 | 15/03/2021 | USD | 7,495,200.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2190674965 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 22/12/2020 | 15/03/2021 | USD | 4,579,438.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2190675004 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 22/12/2020 | 15/03/2021 | USD | 3,263,510.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2190675186 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 22/12/2020 | 15/03/2021 | USD | 7,105,430.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2190675269 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 22/12/2020 | 15/03/2021 | USD | 3,033,205.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2190675343 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 22/12/2020 | 15/03/2021 | USD | 3,246,583.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2190675426 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 22/12/2020 | 15/03/2021 | USD | 5,051,364.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2190675699 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 22/12/2020 | 15/03/2021 | USD | 4,313,108.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2190675855 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 22/12/2020 | 15/03/2021 | USD | 1,834,690.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2190675939 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 22/12/2020 | 15/03/2021 | USD | 3,105,487.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2190676077 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 22/12/2020 | 15/03/2021 | USD | 2,932,287.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2190676150 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 22/12/2020 | 15/03/2021 | USD | 4,025,402.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2190676234 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 22/12/2020 | 15/03/2021 | USD | 7,538,572.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2190676317 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 22/12/2020 | 15/03/2021 | USD | 2,343,426.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2190676408 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 22/12/2020 | 15/03/2021 | USD | 8,557,986.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2190676580 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 22/12/2020 | 15/03/2021 | USD | 3,776,771.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2190676663 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 22/12/2020 | 15/03/2021 | USD | 8,506,323.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2190676747 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 22/12/2020 | 15/03/2021 | USD | 1,854,419.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2190676820 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 22/12/2020 | 15/03/2021 | USD | 8,629,834.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2190677042 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 22/12/2020 | 15/03/2021 | USD | 5,001,410.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2190677125 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 22/12/2020 | 15/03/2021 | USD | 2,149,042.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2190677398 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 22/12/2020 | 15/03/2021 | USD | 1,139,846.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2190677471 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 22/12/2020 | 15/03/2021 | USD | 7,583,244.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2190677554 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 22/12/2020 | 15/03/2021 | USD | 3,080,394.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2190677638 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 22/12/2020 | 15/03/2021 | USD | 11,131,511.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2190677711 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 22/12/2020 | 15/03/2021 | USD | 3,479,366.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2190677802 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 22/12/2020 | 15/03/2021 | USD | 3,846,545.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2190677984 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 22/12/2020 | 15/03/2021 | USD | 4,265,877.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2190678016 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 22/12/2020 | 15/03/2021 | USD | 3,096,829.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2190678107 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 22/12/2020 | 15/03/2021 | USD | 3,752,844.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2190678289 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 22/12/2020 | 15/03/2021 | USD | 4,220,547.00 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2190678362 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 22/12/2020 | 15/03/2021 | USD | 3,685,248.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2190678446 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 22/12/2020 | 15/03/2021 | USD | 3,065,829.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2190678529 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 22/12/2020 | 15/03/2021 | USD | 3,944,149.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2190678792 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 22/12/2020 | 15/03/2021 | USD | 3,924,182.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2190678875 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 22/12/2020 | 15/03/2021 | USD | 3,771,329.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2190678958 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 22/12/2020 | 15/03/2021 | USD | 3,015,840.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2190679097 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 22/12/2020 | 15/03/2021 | USD | 2,703,089.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2190679170 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 22/12/2020 | 15/03/2021 | USD | 1,675,628.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2190679253 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 22/12/2020 | 15/03/2021 | USD | 9,058,999.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2190679337 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 22/12/2020 | 15/03/2021 | USD | 8,709,671.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2190679410 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 22/12/2020 | 15/03/2021 | USD | 4,288,775.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2190679501 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 22/12/2020 | 15/03/2021 | USD | 9,912,475.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2190679683 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 22/12/2020 | 15/03/2021 | USD | 7,712,384.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2190679766 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 22/12/2020 | 15/03/2021 | USD | 9,941,117.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2190679840 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 22/12/2020 | 15/03/2021 | USD | 4,252,967.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2190679923 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 22/12/2020 | 15/03/2021 | USD | 9,864,171.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2190680004 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 22/12/2020 | 15/03/2021 | USD | 6,332,411.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2190680186 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 22/12/2020 | 15/03/2021 | USD | 7,604,296.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2190680269 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 22/12/2020 | 15/03/2021 | USD | 8,065,555.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2190680343 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 22/12/2020 | 15/03/2021 | USD | 6,536,172.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2190680426 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 22/12/2020 | 15/03/2021 | USD | 3,436,643.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2190680699 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 22/12/2020 | 15/03/2021 | USD | 6,843,536.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2222939956 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 22/12/2020 | 15/03/2021 | USD | 6,313,505.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2222940020 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 22/12/2020 | 15/03/2021 | USD | 6,550,200.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2222940293 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 22/12/2020 | 15/03/2021 | USD | 6,520,708.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2222940376 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 22/12/2020 | 15/03/2021 | USD | 2,241,491.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2222940459 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 22/12/2020 | 15/03/2021 | USD | 3,958,776.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2222940533 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 22/12/2020 | 15/03/2021 | USD | 3,898,835.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2222940616 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 22/12/2020 | 15/03/2021 | USD | 9,903,618.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2222940707 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 22/12/2020 | 15/03/2021 | USD | 2,303,811.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2222940889 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 22/12/2020 | 15/03/2021 | USD | 9,933,934.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2222940962 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 22/12/2020 | 15/03/2021 | USD | 5,030,000.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2222941002 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 22/12/2020 | 15/03/2021 | USD | 9,631,377.00 |
| Credit Suisse (Lux) Supply Chain Finance Fund | XS2222941267 | Hoffman SARL | MZ | FAIRYMEAD MULTI OBLIGOR PROGRAMME | 22/12/2020 | 15/03/2021 | USD | 2,341,961.00 |