Pages 1 - 38

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Joseph C. Spero, Magistrate Judge

```
CREDIT SUISSE VIRTUOSO,        )
                               )
          Petitioner,          )
                               )
   VS.                         )   NO. C 21-MC-80308
                               )
SB INVESTMENT ADVISERS (US)    )
INC.,                          )
                               )
          Respondent.          )
_____)
```

San Francisco, California
Friday, May 20, 2022

**TRANSCRIPT OF REMOTE TELECONFERENCE PROCEEDINGS**

**APPEARANCES**: (Appearances via Zoom teleconference.)

For Petitioner:
                     CAHILL GORDON & REINDEL LLP
                     32 Old Slip
                     New York, New York 10005
               **BY:  TAMMY L. ROY, ATTORNEY AT LAW
                     NICHOLAS N. MATUSCHAK, ATTORNEY AT LAW
                     VISHWANI SINGH, ATTORNEY AT LAW**

                     PERKINS COIE LLP
                     505 Howard Street - Suite 1000
                     San Francisco, California 94105
               **BY:  DAVID T. BIDERMAN, ATTORNEY AT LAW**


            **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**


Reported By:  Ruth Levine Ekhaus, RMR, RDR, FCRR
              Official Reporter, CSR No. 12219

1  **APPEARANCES**:  **(CONTINUED)**

2  For Respondent:

3                          QUINN, EMANUEL, URQUHART
                                & SULLIVAN LLP
4                          50 California Street - 22nd Floor
                            San Francisco, California  94111
                    BY:  **MELISSA J. BAILY, ATTORNEY AT LAW**
5

6                          QUINN, EMANUEL, URQUART
                                & SULLIVAN LLP
7                          51 Madison Avenue - 22nd Floor
                            New York, New York 10010
                    BY:  **ANDREW CORKHILL, ATTORNEY AT LAW**
8

9                          QUINN, EMANUEL, URQUHART
                                & SULLIVAN LLP
10                          555 Twin Dolphin Dr. - 5th Floor
                            Redwood Shores, California  94065
11                  BY:  **ROBERT P. FELDMAN, ATTORNEY AT LAW**

12  Also Present:      Aidan O'Connor

13

14

15

16

17

18

19

20

21

22

23

24

25

PROCEEDINGS

<u>**Friday - May 20, 2022**</u>                                    **2:01 p.m.**

P R O C E E D I N G S

---o0o---

THE CLERK:  Calling Case Number 3-21-MC-80308, In Re:
Credit Suisse Virtuoso.

Counsel, could you please state your hands.  Please raise
your hands.  I'm sorry.

Thank you.

Counsel, just to let you know, when I promote you, if you
get a message that says "join as panelist" please join as
panelist.

(Pause in proceedings.)

THE CLERK:  I believe I have everybody, Judge.

THE COURT:  All right.

MR. MATUSCHAK:  I think we may be waiting for my
colleague Ms. Roy.  I didn't see her there.

THE CLERK:  Wait a minute.  I have another hand.
Sorry.  Didn't see her hand.  I apologize.

(Pause in proceedings.)

THE COURT:  Okay.  Are we expecting anyone else?

MR. CORKHILL:  Not from the SoftBank investor side,
Judge.

MS. ROY:  We're all present for Credit Suisse.

THE COURT:  Okay.  Appearances, please.

MR. FELDMAN:  Can anyone hear me?  This is -- this

1    is -- excuse me.  Can you hear me?  This is Robert Feldman.

2              THE COURT:  You can't hear us?

3              MR. FELDMAN:  I seem to have lost the video.

4              THE COURT:  You can't hear us.  We can hear you.

5              MR. FELDMAN:  I can hear you.  Can you hear me, Your

6    Honor?

7              THE COURT:  We can see you too.  You're the

8    white-haired guy in the corner.

9              MR. FELDMAN:  I can hear you, yes; but I'm not

10   seeing -- I'm not seeing you.

11             THE COURT:  You're not missing much.

12             MR. FELDMAN:  I had been seeing you.  Let's see,

13   maybe.  Let's see.

14      I'd been seeing you and hearing everybody talking about

15   their weekend plans, and now I seem to have lost the ability to

16   see.

17             THE COURT:  Is there a --

18             MR. FELDMAN:  For which I apologize, of course.

19             THE COURT:  A caret by the little video camera, do you

20   have a caret by the video camera?  Make sure --

21             MR. FELDMAN:  I don't want -- I don't see.  I mean,

22   that's not the problem.  I lost the screen.

23      May I ask for the Court's indulgence to attempt to sign in

24   again from scratch?

25             THE COURT:  Yeah, go ahead.

PROCEEDINGS

```
1              MR. FELDMAN:  It will take me two minutes.  Okay?  May
2    I?
3              THE COURT:  Yes.
4              MR. FELDMAN:  May I do that?
5              THE COURT:  Yes.  Yes.
6              MR. FELDMAN:  Okay.  I will do that.  Thank you.
7                       (Pause in proceedings.)
8              MR. FELDMAN:  I can hear you.
9              THE COURT:  You can hear us?
10             MR. FELDMAN:  Yes, I can.
11             THE COURT:  Should we march on?
12             MR. FELDMAN:  I think so.
13             THE COURT:  Okay.
14             MR. FELDMAN:  Yes, Your Honor.  Yes, Your Honor.
15             THE COURT:  Then let's go with appearances, starting
16   with Credit Suisse.
17             MR. BIDERMAN:  David Biderman, Your Honor, on behalf
18   of Credit Suisse.
19             MS. ROY:  Your Honor, you have Tammy Roy of Cahill
20   Gordon; and I am joined also by Nick Matuschak and Vishwani
21   Singh of my firm, also for the petitioner.
22             THE COURT:  And for SBIA?
23             MR. FELDMAN:  Your Honor, you are -- you're not --
24   you're not going to want to hear this, Your Honor, but I'm
25   hearing double.
```

**PROCEEDINGS**

1      Yes, Your Honor.  This is Robert Feldman.

2  Unfortunately --

3           THE COURT:  You're getting an echo?

4           MR. FELDMAN:  Yes.  So -- go ahead.

5           THE COURT:  So do you have a speaker on your computer

6  as opposed to using your earbuds?

7           MR. FELDMAN:  I do.

8           THE COURT:  You might want to try switching to that

9  and turn off the earbuds.

10          MR. FELDMAN:  Okay.

11                     (Pause in proceedings.)

12          THE COURT:  And while you're doing that, I'll get the

13  other appearances.

14          MR. FELDMAN:  Does that work better?

15          THE COURT:  I can hear you.  Can you hear us?

16          MR. FELDMAN:  Yes, I think I can.  It's slow.

17          THE COURT:  It may be a foundational problem.

18          MR. FELDMAN:  Your Honor, let me see if I can make

19  my --

20          THE COURT:  Yeah, it's breaking up a little bit,

21  Mr. Feldman.  Yeah.

22          MR. FELDMAN:  Maybe I have to ask for the Court's

23  indulgence and do this right.  I'll turn off my computer and

24  then log back in, Your Honor.  I think that will work.

25          THE COURT:  Okay.  That's fine.  The other alternative

1    is -- I don't know what your experience is with logging in from

2    a computer from this location, where you are, but if it's an

3    Internet issue -- the other alternative is to dial in on a

4    phone and just have audio, which is usually a narrower band,

5    and depending on the location, can be a better result.  But if

6    you want to log out -- go out and come back in, that's fine

7    too.

8             **MR. FELDMAN:**  I think -- I think we're okay.  I've

9    Zoomed -- I've Zoomed with others.  I Zoomed with others this

10   morning and I observed a colleague of yours Zoom this morning

11   to make sure this will all work.

12            **THE COURT:**  Okay.

13            **MR. FELDMAN:**  So I think it's probably something I'm

14   doing.  Just please let --

15            **THE COURT:**  Okay.  We will take a brief recess while

16   Mr. Feldman --

17            **THE CLERK:**  I see another Bob Feldman in my attendee

18   panel, so I don't know if he is maybe logged in twice -- oh, it

19   looks like he's disappeared now.

20            **THE COURT:**  Okay.  Well, so there is the problem.

21            **THE CLERK:**  That might be -- Mr. Feldman, can you say

22   something?

23            **THE COURT:**  No, he's not hearing us.

24            **MR. CORKHILL:**  Your Honor, would you like me to give

25   you our appearances?  I can give Bob's appearance as well.

1     It will, hopefully, subject to technical difficulties, be

2 Robert Feldman and myself, Andy Corkhill, of Quinn Emanuel for

3 SBIA (US).

4          **THE COURT:**  All right.  Thank you.

5     Always fun here on a Friday afternoon.  Glad we could

6 provide some amusement.

7                    (Pause in proceedings.)

8          **THE COURT:**  Well, while he is trying to solve this

9 problem why don't we do another case.  You can all stay here if

10 you want, just -- you can mute yourselves, but I could just --

11 why don't I take the other, the pro se matter that Ruth is

12 going to work on.  We'll do that one and then hopefully

13 Bob's -- Mr. Feldman's thing will be worked out by then.

14                  (Recess taken at 2:13 p.m.)

15     (Unrelated proceedings heard by the Court, reported but

16 not transcribed herein.)

17              (Proceedings resumed at 2:17 p.m.)

18          **THE CLERK:**  Judge, I'm seeing another Bob Feldman in

19 the attendee panel.

20          **THE COURT:**  Promote him and see what happens.

21          **THE CLERK:**  Okay.

22          **THE COURT:**  Mr. Feldman?

23     Mr. Corkhill, have you been in contact with him?

24          **MR. CORKHILL:**  I'm just in contact with him now, Your

25 Honor.  I'm just asking him to confirm.

PROCEEDINGS

1          **MR. FELDMAN:**  Hello?  Hello?  Hello?  Okay?

2          **THE COURT:**  We can hear you.  Can you hear us?

3          **MR. FELDMAN:**  Perfectly, Your Honor.  And I hope you

4    can hear my apology for whatever I've done wrong.  Whatever

5    I've done wrong today.

6          **THE COURT:**  We'll try not to get too far into that.

7          **MR. FELDMAN:**  May I make our appearances, please?

8          **THE COURT:**  They've already been done.

9          **MR. FELDMAN:**  I see.

10          **THE COURT:**  Including for you.

11          **MR. FELDMAN:**  And did Your Honor's -- does the record

12    reflect the presence of Aidan O'Connor, who is the chief U.S.

13    regulatory counsel and chief compliance officer of SBIA (US)?

14          **THE COURT:**  As in the -- he's in the attendees panel?

15          **MR. FELDMAN:**  He would be in the attendees, yes.

16          **THE COURT:**  Great.  Okay.  Welcome.

17       All right.  So the Ninth Circuit, of course, as only they

18    can do, threw a small monkey wrench into these proceedings on

19    Wednesday, in the CBC patent technology case -- of course, it

20    would have to be a patent company that threw a monkey wrench

21    into this.

22       I think I have a way through it.  Now, that you've all

23    consented, I still didn't have jurisdiction when I issued the

24    original order.  But my thought about how to handle that, now

25    that there is consent, is I'll vacate that original order, and

**PROCEEDINGS**

1    I'll treat all the briefing and papers today as an application

2    to reissue that order and issue the same subpoena.  It seems

3    it's all the same issue.  It's all the same standards.  And

4    this time we have consent.

5        How does that sound to -- let's start with -- Credit

6    Suisse?

7            **MS. ROY:**  That's acceptable to Credit Suisse.

8            **THE COURT:**  And, SBIA, is that okay?

9            **MR. FELDMAN:**  We consent, fully.

10           **THE COURT:**  Okay.  All right.  All right.

11       So then I actually have to decide this issue.  And it's --

12   I want to skip to the part that matters to me, if you'll

13   indulge me a little bit.

14       The part that matters to me is the discretionary factors

15   because, frankly, I think I could -- if I was faithful to the

16   requirements in the circuit for the mandatory factors I would

17   get through them all.

18       The discretionary factor that holds me up is undue burden

19   or expense.  And, you know, I just -- I know very little about

20   this.  I'm not sure I know more, having read the factual

21   descriptions; it's so convoluted.  But one thing that I think

22   I'm clear on is that in -- that CSV has got to -- is

23   contemplating a claim under Section 423, and in order to do

24   that, they have to seek and obtain leave of court for the

25   filing of that claim, and to serve on non-U.K. defendants.

**PROCEEDINGS**

1   Am I right on that so as far?

2   Are we all on the same page?

3     **MR. FELDMAN:**  Yes, Your Honor.

4     **MS. ROY:**  Yes, Your Honor.

5     **THE COURT:**  Okay.  And then there is disagreement

6 among the experts -- which are extraordinary experts.

7   I've got to say, these are amazing experts on both sides.

8 I've never seen so much money spent solely on the question of

9 whether documents get produced now or later.  It's an amazing,

10 amazing set of experts.  I compliment you on your experts;

11 maybe not on your use of resources, but on your experts.

12   The there is a dispute as to whether or not that leave

13 will be granted.  Okay.  I take that as a given.  The issue for

14 me is this, and this is a question for Credit Suisse.

15   Have you sought leave yet?  When are you going to seek

16 leave, and when are you going to know?

17     **MS. ROY:**  Your Honor, we have not yet sought leave in

18 the English court.

19   Prior or -- sorry.  Following our initial application,

20 this was after -- it was initially filed in December after

21 about nine rounds of letters back and forth between the

22 parties.  And then in the English court, you need to file a

23 proscribed process of exchanging information.  It's a

24 pre-action protocol process.

25   We believed we had sufficiently done that by -- in

**PROCEEDINGS**

1   December and were ready to proceed.  The claim was made by

2   SBI -- by the SoftBank defendants that insufficient information

3   had been provided, and we had not expressly filed a, quote,

4   letter before action, and served them with that.  And they had

5   threatened that if we proceeded that they would move for costs

6   or sanctions of some type of that.

7        So to take that off the table, Credit Suisse officially

8   served them with a letter before action, did so in February of

9   this year.  And as soon as one serves that, you need to give

10  sufficient time to provide a response.  We asked for a response

11  in two months.  We thought that was sufficient time.  They took

12  more than that, and finally served their letter last week.

13       We are reviewing -- U.K. counsel is reviewing that letter

14  to see if any further steps need to be done with that back and

15  forth process before they can proceed to file for leave to

16  file, to file the claim.  And we hope that if no further

17  correspondence is really necessary in that process, that we

18  could file within the month.

19       But, again, their last communication on this with -- from

20  the SoftBank defendants last week was that they still felt

21  there was insufficient information and it would be improper to

22  proceed.  So we have the back and forth in the U.K.  They're

23  saying:  You still can't proceed with this lawsuit.

24       And here we are before Your Honor and they're saying:  Why

25  haven't you filed yet?  You shouldn't get your discovery.

**PROCEEDINGS**

 1      And so we think those are inconsistent positions.  We

 2  believe -- this is a reasonable contemplation.  The complaint

 3  will be --

 4          **THE COURT:**  So I'm not asking for argument.  I didn't

 5  ask for argument.  I asked for a status report, because I

 6  don't -- I'm not -- as I said, I can get through the mandatory

 7  factors.  That's not the issue for me.

 8      So what happens next?  What is the test about whether or

 9  not you're ready to file for leave?

10      I mean, how is -- how are you going to make that decision?

11  What's the test?

12          **MS. ROY:**  So my client with U.K. counsel will evaluate

13  the claims that they've made there that there is insufficient

14  information provided.  We think we have provided enough

15  information; therefore, we're ready to move forward.  But it's

16  not a decision I can make.  It's a decision that our U.K.

17  solicitors and barristers will be making.

18          **THE COURT:**  But what's the standard under the

19  prefiling protocol for what has to be provided before you can

20  move forward?

21          **MS. ROY:**  My understanding is that sufficient

22  information about the claim and the remedy that's being sought.

23  And we think we've provided that and I think they take the

24  opposite position.

25          **THE COURT:**  And what -- okay.  Well, that doesn't

**PROCEEDINGS**

1    actually answer my question.

2        But once you get through the prefiling stuff and you seek

3    leave, how long does it take for the Court to rule on that?

4        **MS. ROY:**  We anticipated it would be disputed and it

5    would take a couple of months.

6        **THE COURT:**  Couple of months.  So if you filed within

7    the month, we could expect a decision within about 90 days?

8        **MS. ROY:**  I think that would be on optimistic view,

9    but that would be our hope.

10       **THE COURT:**  Okay.  Well, so one way or the other it

11   sounds like you're going to apply in the near future, and my

12   concern is that I don't know whether it's going to be granted.

13       If it's denied, then -- and, of course, you can't file

14   your claim and all of this discovery will be for naught.  It's

15   not insignificant discovery.  And so my feeling about this is

16   to address this as sort of a practical question is whether or

17   not -- there doesn't seem to be any reason for having the

18   discovery until you have permission to file.

19       There is nothing in the materials that suggests that there

20   is a reason why you need it before then.  There is no question

21   that it's significant discovery.  And these folks might never

22   have to go look for it if the precondition is not met.

23       And so my tentative thought is to try to figure out a

24   practical way to deal with that.  And that is -- and there is a

25   couple of ways to do it.  One of ways I was thinking about is I

1   grant the petition conditionally, saying you can have a

2   subpoena that is not any broader than the one you've given to

3   me and takes out paragraph 4 -- which I think you're not

4   defending anymore -- but you can't serve it until you get leave

5   to file the claim and serve the non-U.K. defendants.

6       And then go through a process where we all -- where you

7   all do what is the next thing that should happen, which is meet

8   and confer on the actual details of the production, and we get

9   to keep that process going while we're talking about -- while

10  we're waiting for leave to be granted or denied.  But if it's

11  denied, I wouldn't want to be in the position of having

12  already -- especially if since it's -- you know, we're not

13  talking about five years before the PTO.  We're talking about a

14  pretty prompt process it sounds like.  And so I didn't see any

15  reason why we had to -- why this couple of months mattered.

16  But that's my thought.

17      Maybe, Ms. Roy, you have a thought on that.

18      **MS. ROY:**  Yes, Your Honor.  I think, the -- first we

19  would say that the law does not require the petitioner to wait

20  as long as the proceeding is in reasonable contemplation, and

21  it is here.  We've provided an objective basis to say that it

22  is in reasonable contemplation --

23      **THE COURT:**  So I'm not disputing that.  And I thought

24  I told you that it's -- this is the discretionary factor of

25  whether this is an undue burden.  And that's -- so that's --

**PROCEEDINGS**

 1  the question is whether or not.  And I think I'm perfectly

 2  cable of doing it.

 3      There are some courts, including the Second Circuit, that

 4  have done it under the mandatory factors.  But just leaving

 5  that aside, under the discretionary factors, as a practical

 6  matter, why not wait?

 7          **MS. ROY:**  I don't think the law requires us to wait.

 8  I don't think -- I think the requests are tailored and limited

 9  as far as discovery generally goes in the United States.

10          **THE COURT:**  Why -- you're not persuading me with that

11  argument.  And you're not going to persuade me with that

12  argument.  The only way you're going to persuade me is if there

13  is a good practical reason.  Because I think in terms of the

14  undue burden, I've got a lot of discretion here.  And in order

15  to convince me to exercise my discretion, you have to convince

16  me that it actually makes a difference.

17          **MS. ROY:**  I think the declarations we've submitted by

18  Ms. Gloster and Mr. Golding, our solicitor and barrister, have

19  indicated that we do believe those documents would be useful in

20  terms of starting the proceeding and providing these initial

21  applications.

22      I think, they both say that the documents really are for

23  the use, once the proceeding is going, but we do believe they

24  will be used in those preliminary steps as well.

25          **THE COURT:**  Okay.

1    **MS. ROY:**  They are not necessary, but they will be

2    used.

3        **THE COURT:**  Well, I understand that.  But if they're

4    not necessary -- which is what I took from it as well -- then

5    you don't really need them right now.  I mean, that's the --

6    what I drew from those experts is:  Yes, they're important to

7    the litigation, and if we had them now, yes, we would use them,

8    but they aren't necessary to the first stage.  They are

9    necessary to subsequent stages.

10       And so I'm trying to figure out, you know -- you know, and

11   it's also, you know, you've been perfectly willing to file the

12   motion for leave without these documents.  I mean, since

13   December or January.  And so -- and that's -- that -- so it

14   certainly suggests that these aren't that important at least.

15       But what I took from the experts' declarations was that

16   they were -- they might be used, but they weren't necessary for

17   the first phase.  And so that's why I came up with this sort of

18   practical solution.

19       You know, I could envision circumstances where, you know,

20   not having them now might actually be harmful.  But I didn't

21   see that in your papers and so that's why I raised this

22   question.

23       **MS. ROY:**  And, Your Honor, we don't disagree that they

24   are not necessary.  But, again, the standard, we believe, is

25   for use.  They don't have to be necessary.  They don't have to

1   be important to.  They have to be for use in the proceeding.

2   The proceeding begins as soon as they filed the leave

3   application.

4         THE COURT:  That's actually not the test, because

5   we're talking about undue burden.  And so, I'm going to

6   balance -- like I would under the Federal Rules of Civil

7   Procedure -- how much effort you're making them go to against

8   whether it's -- makes sense in the proceedings.  So it's not --

9   not actually the tests.

10      But, you know, if, if I -- and I'm not talking about

11  ultimately denying you the discovery.  I just haven't seen

12  any -- heard any reason why it's needed right now.  In fact,

13  I'm inclined to grant generally what you're talking about.

14      I'm just trying to figure out what's the practical reason

15  for having it now, when it's, you know, two months from now,

16  three months from now, you may be denied permission to file

17  your claim, and denied leave or whatever they call it in the

18  U.K.  And at that point, I don't see why there should have

19  been, you know, a hundred attorney hours going into figuring

20  out what gets produced and what's privileged and what shouldn't

21  be produced, and going through the e-discovery process,

22  et cetera, et cetera.

23        MR. FELDMAN:  Your Honor, this is Robert Feldman.

24      May I be heard for a moment?

25        THE COURT:  In a minute.  I want to make sure Ms. Roy

1    has exhausted her -- what she wants to say.

2           MR. FELDMAN:  Of course.  Of course.

3           MS. ROY:  I think, Your Honor, again, the couple of

4    months was my best guess in when a court will decide this.

5    And, I guess, the process is -- you know, we wanted to start

6    this process.  It's obviously going to be a hard-fought

7    discovery on multiple levels in this case.

8           For eight requests, Your Honor, has noted how much expense

9    and time has gone in with just that.  And we want to get the

10   process started now with these documents.  This is probably not

11   the only document that we'll be seeking from a third party to

12   further this lawsuit.

13          And to wait just -- again, the guess -- if it was my guess

14   it would be a couple of months when they signed the leave

15   application.  To the extent that is also fought and it took us

16   five months to get here just with respect to just eight

17   discovery requests, when we are disputing leave and

18   jurisdiction, it could very well be longer than that.

19          And so it might not be a couple of months.  It could be

20   much longer than that.  And we would like to start the process

21   now.  We would like to get the documents now and begin that

22   process.

23          THE COURT:  Okay.  Mr. Feldman?

24          MR. FELDMAN:  Your Honor, I have two comments and, if

25   I'm permitted, one question.  May I make the first two

 1   comments?

 2             **THE COURT:**  Definitely can make the comments.

 3             **MR. FELDMAN:**  Okay.  The first comment is that you'll

 4   be delighted to know that you're quite correct.

 5         The second Golding declaration makes clear that these

 6   documents are not necessary now.  That is at Docket 20-1,

 7   paragraph 19.  That's my first comment.

 8         My second comment, and this is in response -- indirectly

 9   to Your Honor's questions, it is not argument about the law or

10   the facts.

11         Having -- I was in trial when the opening brief was filed.

12   I read it and authorized its filing.  I participated heavily in

13   the drafting of the reply brief.  And I noted in the opposition

14   a suggestion that there might be some daylight between the

15   respondent's willingness to produce documents and what would

16   happen in an English proceeding with respect to SBIA (US)'s

17   documents.

18         And in response to Your Honor's questions about what's

19   necessary and what's appropriate and what's undue burden, I am

20   authorized by SBIA to make the following unequivocal statement,

21   and Mr. O'Connor is on the phone to hear this.  And I'm going

22   to say this even more slowly than I usually speak so that it's

23   perfectly transcribed and everybody has got it.  And this goes

24   to whether there is any necessity for any discovery process in

25   this country.

 1        If a U.K. case is permitted to go forward, and if

 2    SBIA (US) is not a party, SBIA (US) will transfer all of its

 3    documents relating to this matter to the SoftBank entities that

 4    are named as parties.  To be clear, this is a commitment to

 5    Your Honor, to this court, and is not a submission to the

 6    jurisdiction of the English courts by any SoftBank entity.

 7            **THE COURT:**  So I just -- just to make sure I

 8    understood what you just said --

 9            **MR. FELDMAN:**  Yes, Your Honor.

10            **THE COURT:**  SBIA (US) is stipulating on the record

11    here that if the -- there is -- the U.K. case is permitted to

12    go forward and SBIA (US) is not a party, you will, SBIA (US),

13    will transfer all of its documents involving all of the matters

14    at issue --

15            **MR. FELDMAN:**  Yes.

16            **THE COURT:**  -- to the SoftBank entities that are named

17    in that proceeding.

18        Is that right?

19            **MR. FELDMAN:**  Yes.  Correct.  And without any

20    review -- it will be a simple thing for SBIA (US) to do.  They

21    will just send everything.

22            **THE COURT:**  Right.

23            **MR. FELDMAN:**  And just leave it to defendants in any

24    authorized lawsuit in the U.K. about this matter to sort out

25    the discovery.

1          That, in my opinion, is the same thing that we have in

2     effect, I thought, proven by the expert testimony that said

3     where there is a contractual relationship and a custom and

4     practice, the U.K. courts would find that the documents are in

5     the vision fund's custody and control.

6          But if Your Honor was concerned about that as somehow

7     qualified or conditioned or cabined or caveated, I didn't want

8     Your Honor to have that concern.

9          So as -- as authorized by my client, who has read this,

10    and who is on the phone, we are prepared to eliminate any

11    necessity for any activity by SBIA (US), other than sending all

12    of its files.  And Your Honor can -- you know that I'm not

13    going to quibble about what that means, but if you want to

14    define it somehow, you're certainly able to in an order -- all

15    electronic, all paper, blah, blah, blah, everything that we

16    have that relates to the matters that are in the papers you'll

17    get.  Excuse me, the SBIA defendant -- excuse me -- the

18    SoftBank defendants in an authorized action will get.

19          **THE COURT:**  So you're -- I understand that.

20          **MR. FELDMAN:**  Yeah.  So, there is no -- no offense to

21    you or to anyone on this call, we never have to see each other

22    again.  It will just be sent.

23          **THE COURT:**  Well, I appreciate that.

24          And it is -- one of the questions I had on the

25    discretionary factors other than the one I commented about.

 1   But you had another comment to make?

 2        **MR. FELDMAN:**  I had a question.  It's more in the

 3   nature of you're going to call it argument, and I don't want to

 4   get on the wrong side of you, so I wanted to --

 5        **THE COURT:**  We're here for argument.

 6        **MR. FELDMAN:**  I know.  But I think -- I do believe

 7   that what I just said eliminates every single question of every

 8   single aspect of everything having to do with this litigated

 9   matter.  We will send everything to a defendant in a properly

10   authorized action.

11        And then the -- if there is a plaintiff in England, the

12   plaintiff can seek it from the proper defendants, and they can

13   fight about it there.

14        You don't have to order meet and confers.  I don't have to

15   participate in them.  There doesn't have to be anymore

16   discussion.  You just say:  Do it.

17        **THE COURT:**  Ms. Roy, thoughts?

18        **MS. ROY:**  So this is the first that we're hearing of

19   that, and so we'd need to think about that.  Never raised in

20   the meet and confers -- or the single meet and confer on this.

21        But, I guess my one concern would be Mr. Feldman's

22   statement that we would have that fight "over there," meaning

23   it would be left up to the U.K. court.  And I do think that is

24   imposing a foreign discoverability test.  It's not -- I don't

25   think it's a disputed question that the U.S. courts permit

1   broader discovery than the U.K. courts sometimes do.  And that

2   that is not a requirement under the statute, that it has to be

3   something that a U.K. court would grant, that we could have it.

4   But that would be my concern about it.  But, again, this is the

5   first time that we're hearing that.

6        **MR. FELDMAN:**  I don't -- I'm not going to respond to

7   that, unless you want me to.

8        **THE COURT:**  I do.

9        **MR. FELDMAN:**  You want me to respond to that?

10       **THE COURT:**  Yes.

11       **MR. FELDMAN:**  Okay.  I don't know what the U.K. courts

12  do or don't want, do or don't allow, but it certainly shouldn't

13  be -- we certainly shouldn't engage in a process here for the

14  purpose of providing more discovery than the U.K. courts would

15  permit.

16       **THE COURT:**  Why is that?

17       **MR. FELDMAN:**  Because one of -- one of the very

18  discretionary factors says that, that you're not supposed to.

19       **THE COURT:**  Well, 1782 does not, as Ms. Roy says, have

20  a foreign discoverablity requirement.  In fact --

21       **MR. FELDMAN:**  And I agree with that.

22       **THE COURT:**  -- it could be that the foreign

23  discoverability rules could be much less favorable than in the

24  U.S. --

25       **MR. FELDMAN:**  I agree.

1    **THE COURT:**  -- but as long as they are open to getting

2    whatever we produce, then it doesn't matter.  The -- some --

3    you know, there is -- the case law on this is sort of all over

4    the map.

5    **MR. FELDMAN:**  It certainly is.

6    **THE COURT:**  As someone said, you know, you can't

7    sidestep on favorable foreign rules and someone saying it's not

8    really not our problem because we're going to apply what we're

9    supposed to apply.  But, you know -- and I tend to think that

10   1782 was not designed to cabin discovery within the bounds of

11   what the U.K. might permit.

12   **MR. FELDMAN:**  I --

13   **THE COURT:**  Because that could litigate -- result in

14   ridiculous sorts of litigation.

15   **MR. FELDMAN:**  I completely agree.  But here I'm

16   offering the Court, in the exercise of its discretion, a

17   perfect opportunity, frictionless opportunity, costless

18   opportunity to put the documents into the foreign jurisdiction,

19   which is what the purpose here is, and let the foreign

20   jurisdiction sort it out.  That is exactly what 1782 is

21   designed to do.

22        So this is -- this is a -- I don't want to say it's an

23   unusual case, but it's a perfect case of making 1782 serve all

24   of the purposes that it's supposed to serve with no trouble.

25   It's perfect, that is to say it's frictionless.  It's -- it

1    will be a perfect representation of what the English courts

2    want.

3         And it's not -- I'm not suggesting to you that it's

4    because they want less or because they want more.  No offense

5    to Your Honor, you should not care.  You just want to put the

6    documents in England and let the English court sort it out.

7         The typical cases, and the ones that Ms. Roy is talking

8    about and perhaps Your Honor is puzzling about are cases where

9    somebody says:  I'm not going to send those documents because

10   the Cayman Islands or Malta or Nigeria wouldn't want them or

11   wouldn't use them.

12        That's not what I'm saying.  I'm saying we are without

13   question and qualification and cabin and caveat sending it all,

14   and then our friends in the U.K. can deal with it.

15        That's a perfect representation of what 1782 should do.

16   And I'm telling you that the language that I read -- which I'm

17   happy to read again or send to Your Honor -- is exactly what we

18   will do.  Just send it.  Assuming that there is a lawsuit and

19   there is a SoftBank defendant.

20        And I do have a question which I would ask when we're

21   on --

22            THE COURT:  Let me get Ms. Roy's response to what you

23   just said.

24            MR. FELDMAN:  Sure, Your Honor.

25            MS. ROY:  Your Honor, I can only expect that they are

 1    making this offer because it will be less discovery than if

 2    they gave it to us under the subpoena or the jurisdiction of

 3    this Court and what we're permitted under 1782.  And, again,

 4    letting the foreign court sort it out is imposing a foreign

 5    court discoverability test.

 6              **THE COURT:**  You had a question, Mr. Feldman?

 7              **MR. FELDMAN:**  Yes, Your Honor.

 8         This question relates to a different topic, if I may.

 9              **THE COURT:**  Sure.

10              **MR. FELDMAN:**  Okay.  It relates to the mandatory

11    factors, that is the statutory factors.  And my question to

12    Your Honor is whether Your Honor has considered the IJ case --

13    *IJK* case from the Second Circuit which we submitted recently.

14              **THE COURT:**  I have.  Absolutely, I have.

15         The difference between that case and this case, as I

16    recall, is in this case we actually have experts proving up

17    that they can get through the step of permission.  That's the

18    difference.

19              **MR. FELDMAN:**  I believe that that's a distinction

20    without a difference, and I'll address that briefly if you

21    would like.

22              **THE COURT:**  Sure.  Go ahead.

23              **MR. FELDMAN:**  Okay.  What the IJ -- *IJK* case stands

24    for, I believe, is that when there are significant procedural

25    hurdles that have to be met, it cannot be said documents are --

1    or that the lawsuit is reasonably contemplated.

2        The language in the *IJK* case is important.  It says -- and

3    I know you've read it, but (reading):

4            "When there are significant procedural barriers

5        under foreign law that might prevent the party from

6        suing or using the material, it seeks" -- then the

7        mandatory factor is not satisfied.

8        And I agree with you, in this case, there are experts.  In

9    the *IJK* case it was not clear, frankly, whether there were

10   experts or not.  Looking at the list of counsel in that case,

11   my guess is that there would have been and -- but I don't think

12   that's the real test.

13       I think what the *IJK* case says is when there is a good

14   faith, reasonable dispute about whether there will be a foreign

15   lawsuit, it is not appropriate for our courts to produce --

16   order production.  That's what I believe it says.

17           **THE COURT:**  I thought it said that you had to have an

18   objective basis to conclude that they could get over those

19   hurdles.

20           **MR. FELDMAN:**  That's a correct statement.

21           **THE COURT:**  And why isn't that an expert who says

22   we're getting over it?

23           **MR. FELDMAN:**  Because in this case, we have an expert

24   who says that they won't.  And in the *IJK* --

25           **THE COURT:**  Do you think they have to actually

1    prove --

2         **MR. FELDMAN:**  I think that Your Honor is required --

3    and this is what the *IJK* case said, and what an earlier opinion

4    by then Professor -- actually not then professor, one time

5    Professor Lynch, then circuit court judge said, is that

6    Your Honor is not -- and this is probably what you're

7    reflecting.

8         No one would expect Your Honor to assess the merits of

9    proposed foreign action.  But this *IJK* case says that you are

10   supposed to take a limited foray into foreign law to assess the

11   procedural mechanism by which a movant may inject the discovery

12   into foreign proceedings.  And this case says that that burden

13   is on the party seeking the documents.

14        And I believe that in our record -- I'm not here to tell

15   you that our guy is smarter than their person, and I'm not here

16   to tell you that we proved it and they failed to prove it and

17   there is no way, et cetera, et cetera.

18        What I'm saying -- and this is how I would look at it.

19   They've taken five months having told you that it would be a

20   few weeks.

21        We have submitted an expert declaration saying, "no way."

22   They've submitted a declaration expert declaration saying, "yes

23   way."

24        And I think under those circumstances under the *IJK* case

25   with respect to the procedural mechanisms, they have not

1  carried what the *IJK* case said was their burden.

2      So while I understand if Your Honor is approaching this

3  from the perspective of us, for example, saying that we're

4  going to prove that they're wrong, so this is a stupid case and

5  you shouldn't send the documents; that's not what we're saying.

6      We're saying something not all that different.  You'll

7  pardon me for saying it this way, than what you're saying,

8  which is:  We don't know what's going to happen, so why should

9  we do this?  Let's wait.

10      And I will tell you that that's exactly what I would

11  suggest, is that we wait.  Your Honor has proposed one way of

12  waiting, namely that we -- you grant the motion but say they

13  can't serve the subpoena or we don't have to respond until

14  there is a ruling from the British courts.  That's fine.

15      You could also deny -- or grant our motion without

16  prejudice to renewing it.

17      There is a whole number of ways that you could do it.  But

18  I would urge you -- and I know you have and I would ask that

19  you perhaps give additional consideration to the *IJK* case,

20  because I think, first of all, it's close to being on all

21  fours.

22      There was a liquidator.  The liquidator couldn't or

23  wouldn't go forward; that's exactly what we have here.  There

24  were procedural steps that the moving party needed to go

25  through to get a case on file, and the Court held they hadn't

**PROCEEDINGS**

1   shown that they were going to do that.  That's what we say has

2   happened here.

3        And I agree that you have here a battle of experts.  And I

4   would not ask Your Honor to resolve that as you might have to

5   on a summary judgment motion.  Here, what I would say is that

6   Your Honor can easily say:  These are two fabulous experts.  I

7   don't know how this will work out.  Neither has convinced me to

8   a certainty.  Neither has even convinced me --

9            THE COURT:  I got to tell you -- let me stop you.

10           MR. FELDMAN:  Yes.  Sure.

11           THE COURT:  There is nothing in that opinion that

12  you -- that says anyone has to convince me to a certainty.

13           MR. FELDMAN:  I said that.  I agree.

14           THE COURT:  There is nothing -- not in the opinion --

15           MR. FELDMAN:  I agree.

16           THE COURT:  -- in the Second Circuit opinion --

17           MR. FELDMAN:  I agree.

18           THE COURT:  -- that's not the test.

19           MR. FELDMAN:  I totally agree.

20           THE COURT:  Where you lose me -- where you lose me in

21  terms of the mandatory factor --

22           MR. FELDMAN:  Yes.

23           THE COURT:  -- is that I don't think the limited foray

24  that the Second Circuit invited is anything more than what they

25  came up with, you know, in the *Squire Patton Boggs* case which

**PROCEEDINGS**

1  was, you know, a reliable -- sufficiently reliable indications

2  of the likelihood the proceeding will be instituted within a

3  reasonable period of time.  And they used language of a

4  sufficient basis to conclude.  They don't talk about:  I got to

5  make a finding.

6        **MR. FELDMAN:**  I agree with you.  I think the only

7  finding --

8        **THE COURT:**  Well, but then the answer is --

9        **MR. FELDMAN:**  I think --

10       **THE COURT:**  Then the answer is, if they have an

11 objective basis for concluding it and certainly one looking at

12 their expert could say:  That's a sufficient basis to conclude,

13 it might be wrong but it's a sufficient basis.

14    I don't think that's -- the limited foray that the

15 Second Circuit invited is the kind of thing where you're

16 saying:  Well, if there is a battle of the experts, then the

17 defendant wins.

18       **MR. FELDMAN:**  Well, I will read to you that the

19 Second Circuit said, with respect to the party seeking the

20 discovery (reading):

21        "It has not carried its burden to show that the

22     proposed suit is within reasonable contemplation and

23     it is not entitled to discovery under Section 1782."

24     And in the very next paragraph, in connection with that,

25 it said (reading):

1          "A district court's focus is not on the merits,

2     but on the movant's practical ability to inject the

3     requested information into a foreign proceeding."

4     And given the record here, where they said they would do

5     it within five weeks -- a few weeks and it's now five and a

6     half months, and they still don't seem to be able to pull

7     themselves together to make this application --

8          **THE COURT:**  And your client had nothing to do with

9     that.  Don't give me --

10          **MR. FELDMAN:**  Well, perhaps we did.

11          **THE COURT:**  Oh, no.  Come on.  Listen, nobody is

12     fooling me.  I understand.  I understand this is all part of

13     the dispute game.

14          **MR. FELDMAN:**  Yes.

15          **THE COURT:**  It's just part of the dispute game.

16          **MR. FELDMAN:**  Yes.

17          **THE COURT:**  You guys resisting, them having gone

18     through the prerequisites to even ask a court is just a part of

19     the dispute game as you bringing a motion to quash here --

20          **MR. FELDMAN:**  Yes.

21          **THE COURT:**  -- and offering to have the documents

22     there so that somebody in the U.K. will fight them on the

23     documents there.  So I'm not -- I'm not actually going to buy

24     into the details of the game the way you characterize it in

25     terms of attributing:  Well, they should have done it.  They

**PROCEEDINGS**

1   have taken five months.  They may never be able to get it.

2       I'm not buying that.

3       **MR. FELDMAN:**  Okay.  Well, I would then reframe my

4   comments and questions to the following extent.

5       I agree with you, we should wait.  I would ask the Court

6   to review the *IJK* case.  I have nothing else to say.

7       **THE COURT:**  Okay.  So the only question in my mind is

8   would your client be willing to transfer the documents now?

9       **MR. FELDMAN:**  I haven't asked, but I would assume.

10      **THE COURT:**  Would that change the landscape, Ms. Roy?

11      **MS. ROY:**  I don't believe so, when they're

12  transferring them to avoid U.S. discovery.

13      **THE COURT:**  Hm-hmm.

14      **MR. FELDMAN:**  Your Honor, I will tell you that if we

15  aren't so willing, I'll notify the Court promptly, but I assume

16  we are.

17      **THE COURT:**  Yeah.  Well, I'll take you up on your

18  stipulation to transfer them.  I'll certainly include that in

19  the opinion, as it's stated on the record already.

20      **MR. FELDMAN:**  Thank you.

21      **THE COURT:**  But -- so I don't -- but I'm -- this is

22  all, as I said, part of the dispute resolution process.  And

23  I'm going to get things started.

24      I think the way I have envisioned this is actually

25  reasonably practical, and it will cause you all to do things

**PROCEEDINGS**

1    which are less than responding to the subpoena, but more than

2    doing nothing and waiting until something happens in the U.K.

3          It's probably too Solomonesque, but -- so the idea is I'm

4    still focusing on granting the application conditionally that

5    you can, upon granting of leave to file and service of at least

6    one defendant with the 432 claim -- or granting leave to file

7    and granting leave to serve, I should say, at least one

8    defendant with the 432 claim, you can serve a subpoena which is

9    not broader than the one that you applied for on SBIA (US),

10   with the exception -- and you should eliminate paragraph 4

11   because I think you eliminated that during the briefing.

12         Number one.

13         Number two, I want you to start talking about the elements

14   of this subpoena now.  This is the doing more than just waiting

15   for the U.K.  I want the meet and confer process on the actual

16   details of what might get produced to start right away because

17   I'm -- we're going to -- we're going to see how this plays out.

18         We're going to see how long the fight takes in the U.K.

19   We're going to see what happens and whether or not I should

20   advance the time for producing it, or the time that producing

21   it makes sense.  But in any event, I want to be ready for all

22   of those possibilities, and I think one of those is having you

23   all start to figure out exactly what would be produced assuming

24   it was served.

25         So I want the parties to immediately start their meet and

**PROCEEDINGS**

1  confer efforts.  And you can write as many letters as you want,

2  but you must have at least one face-to-face, at least by video,

3  doing that.

4      And then I would set a status conference -- I don't

5  know -- 90 days out.  Some reasonable period of time out to

6  talk about what's the status of the decision and the

7  application in the U.K.

8      Did I say 432 instead of 423?  423.

9      And to talk about the scope and hopefully resolve the

10  scope.  Hope springs eternal.  I know you won't resolve the

11  scope.  The way this fight is shaping up, there is going to be

12  some fuss about it.  But maybe, maybe, hope springs eternal.

13  That will be great.  I promise to be extremely unpleasant if

14  you don't resolve the scope; but maybe that's not enough

15  incentive to get people to resolve scope issues.  But that's my

16  plan.

17      Anyone want to make any last comments about why I'm making

18  a mistake or how I should modify it or anything?  Starting with

19  Credit Suisse.

20      **MS. ROY:**  We have nothing further to add to what we've

21  already argued.  Thank you, Your Honor.

22      **THE COURT:**  Mr. Feldman?

23      **MR. FELDMAN:**  I have a whole lot to say.  That's a

24  joke.

25      **THE COURT:**  Excellent.

1          **MR. FELDMAN:**  I think 90 days is ambitious.  I don't

2     think -- based on what I have heard, but I don't know for sure,

3     I don't think there is any way that U.K. proceedings get

4     resolved that way.

5          And I would have a question for you.  If I were to be able

6     to inform you that we were able to send all our documents

7     forthwith to the U.K., would that eliminate the need for me to

8     have anything to do with this discovery?

9          **THE COURT:**  No, it wouldn't.

10         **MR. FELDMAN:**  Okay.  Then I'm not going to ask them

11    for that.

12         **THE COURT:**  I thought you might not, but --

13         **MR. FELDMAN:**  I think 90 days is ambitious.

14         **THE COURT:**  It may be ambitious, but I want to keep

15    tabs on this.  And I do want to press ahead with the meet and

16    confer and make sure that happens and it's all resolved within

17    90 days.  That may be ambitious itself, but that's why I want

18    to proceed in this fashion.

19         Okay.  Well, so that's what I'm going to do.  And I'll --

20    let's set a date, Karen, 90 days out.

21         **THE CLERK:**  How does August 19th work on everybody's

22    calendar?  At 2:00 p.m.?

23         **THE COURT:**  Sure.

24         **MR. FELDMAN:**  Your Honor, I'm not sure if I'm not

25    free, and I'm not at my desk.  If that date doesn't work, may

**PROCEEDINGS**

1    we apply to you for a minor adjustment?

2         THE COURT:  You talk to the other side if you want to

3    stipulate to a change in the date.

4      Does that work for Credit Suisse?

5         MS. ROY:  It does.

6         THE COURT:  Okay.  All right.  Give me a week in

7    advance a joint status conference statement that addresses

8    where we are on everything, and then we'll have that

9    discussion.  Okay.

10        MR. FELDMAN:  Have a nice weekend, Your Honor.

11        THE COURT:  Thank you all.

12        MS. ROY:  Thank you, Your Honor.

13        MR. CORKHILL:  Thank you, Your Honor.

14        MR. BIDERMAN:  Thank you, Your Honor.

15             (Proceedings adjourned at 3:02 p.m.)

16                    ---o0o---

17

18

19

20

21

22

23

24

25

1

2                     **CERTIFICATE OF REPORTER**

3          I certify that the foregoing is a correct transcript

4    from the record of proceedings in the above-entitled matter.

5

6    DATE:    Tuesday, May 24, 2022

7

8

9

10
      _____

11       Ruth Levine Ekhaus, RMR, RDR, FCRR, CSR No. 12219
              Official Reporter, U.S. District Court

12

13

14

15

16

17

18

19

20

21

22

23

24

25